## BONAPARTE. *v.* TAX COURT.

The Constitution does not prohibit a State from including in the taxable property of her citizens so much of the registered public debt of another State as they respectively hold, although the debtor State may exempt it from taxation or actually tax it.

ERROR to the Court of Appeals of the State of Maryland.

Mrs. Elizabeth Patterson, a resident of Baltimore, Md., returned, in accordance with the law of that State, to the proper board of assessors, the following property : City of New York stock, six per cent ; City of New York stock, seven per cent ; County of New York stock, seven per cent ; County of New York stock, six per cent ; State of New York stock, six per cent; State of Pennsylvania stock, six per cent; State of Ohio stock, six per cent.; and City of Philadelphia stock, six per cent. She stated their several amounts, and claimed their exemption from taxation because they were of a public character, and, except a portion of the City of Philadelphia stock, were exempt from taxation by the laws of the States respectively authorizing their issue, while that portion had always been subjected by Pennsylvania to a tax which she had paid to that State. They were of the character known as "registered ;" *i. e.,* transferable only on the public record books of the States and municipalities issuing them, and the interest was paid only at places provided by the laws of those States, and beyond the boundaries of Maryland. The board of control and review by which this return was revised, disallowed her claim for exemption. She thereupon filed a petition in the Baltimore City Court, praying that the above-described property should be stricken from the lists. The order of the court granting the relief prayed was reversed by the Court of Appeals, whereupon she sued out this writ of error. She died during its pendency, and her executor was substituted in her stead.

*Mr. I. Nevitt Steele* and *Mr. Charles J. Bonaparte,* for the plaintiff in error, submitted her following propositions : —

The asserted right of one State to tax the loans of its citizens to another State involves its right to prohibit such loans,

and forbid all dealings on the part of its citizens with the governments of other States. Such a right assumes the exist-ence of a power which is inconsistent with the mutual amity imposed on all the States by the Constitution.

The registered public debt of a State is properly subject to its sovereignty, and therefore to its taxing power; and whenever this sovereignty is exercised by the public acts of the State, either taxing or exempting from taxation this debt, they must, under art. 4, sect. 1, of the Constitution, be recognized by the courts of other States as giving it for taxation a *situs* in the State by which it was incurred.

The same property cannot at the same time have more than one *situs* for the purpose of taxation. It, therefore follows, and it is the only Federal question presented by this record, that the proper *situs* for taxation. of property of this de-scription is, under the Constitution, in the State owing the debt. This view finds support also in the following consid-erations:—

1. It shuts the door to fraud and perjury. The ownership of the debt of each State can be determined by an inspec-tion of public records, always open to its fiscal officers; that of the debt of other States can be learned only from the returns of taxpayers. To say nothing of the gain to public morality, the advantages to the treasury, in the narrowest sense, of a mode of collection dependent in no wise upon the consciences of contributors, would largely exceed the amount raised by taxing foreign investments.

2. It simplifies the whole method of collection. The stock, the thing taxed, remains within the State, subject to levy and sale whenever the tax thereon is in arrear. If a resident of one State, on the other view, invested all his property in the debts of other States (a perfectly supposable contingency), it is hard to see how the State where he resides could compel him to pay taxes.

3. It gives the public debt of each State a fixed value for all investors, and in each of the great financial centres of the country. This is of almost incalculable advantage to the States that borrow, and to the capitalists who wish the largest choice of investments. The opposite construction would, in

the last resort, confine the loans of each State to its own citizens.

4. Finally, it gives the citizens of one State a direct interest in the good order and prosperity of sister States; tends to prevent sectional jealousies and antagonisms; avoids the danger of reciprocally hostile legislation by the several States against the credit of their neighbors, and promotes the " more perfect union " aimed at by the Constitution.

*Mr. Charles J. M. Gwin*, Attorney-General of Maryland, *contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The question we are asked to decide in this case is whether the registered public debt of one State, exempt from taxation by the debtor State, or actually taxed there, is taxable by another State when owned by a resident of the latter State. We know of no provision of the Constitution of the United States which prohibits such taxation. It is conceded that no obligation of the contract of the debtor State is impaired. The only agreement as to taxation was that the debt should not be taxed by the State which created it,

It is insisted, however, that the immunity asked for arises from art. 4, sect. 1, of the Constitution, which provides that full faith and credit shall be given in each State to the public acts of every other State. We are unable to give such an effect to this provision. No State can legislate except with reference to its own jurisdiction. One State cannot exempt property from taxation in another. Each State is independent of all the others in this particular. We are referred to no statute of the debtor State which attempts to separate the *situs* of the debt from the person of the owner, even if that is within the scope of the legislative power of the State. The debt was registered; but that did not prevent it from following the person of its owner. The debt still remained a chose in action, with all the incidents which pertain to that species of property. It was "movable" like other debts, and had none of the attributes of "immovability." The owner may be compelled to go to the debtor State to get what is owing

to him ; but that does not affect his citizenship or his domicile. The debtor State is in no respect his sovereign, neither has it any of the attributes of sovereignty as to the debt it owes, except such as belong to it as a debtor. All the obligations which rest on the holder of the debt as a resident of the State in which he dwells still remain, and as a member of society he must contribute his just share towards supporting the government whose protection he claims and to whose control he has submitted himself.

It is true, if a State could protect its securities from taxation everywhere, it might succeed in borrowing money at reduced interest ; but, inasmuch as it cannot secure such exemption outside of its own jurisdiction, it is compelled to go into the market as a borrower, subject to the same disabilities in this particular as individuals. While the Constitution of the United States might have been so framed as to afford relief against such a disability, it has not been, and the States are left free to extend the comity which is sought, or not, as they please.

Taxation of the debt within the debtor State does not change the legal *situs* of the debt for any other purpose than that of the tax which is imposed. Neither does exemption from taxation.

As the only Federal question involved was decided right in the court below, we cannot look into the other errors which have been assigned. *Murdock* v. *City of Memphis*, 20 Wall. 590.

*Judgment affirmed.*