NATIONAL SURETY COMPANY, Appellant, v. STARKEY, COUNTY TREASURER, Respondent.

(170 N. W. 582).

(File No. 4473.   Opinion filed January 30, 1919.   Rehearing denied March 29, 1919.)

1.  Taxation—Exemption From Taxation, Constitution as Test—Legislative Power, Limit of.

     The Legislature is without power to exempt property from taxation other than such classes of property as are mentioned in Const., Art. 11, Sec. 7.

2.  Same—Taxation of "Public Securities"—Statute as Classifying Taxable Property—Non-power of Legislature to Define Constitutional Term—Statutory Definition, Futility of.

     In enacting Pol. Code, Sec. 2054, defining the classes of real property, and Sec. 2055, defining the classes of personal property, for purposes of taxation, the Legislature as not attempting to extend the scope of the term "property" as used in Const., Art. 11, Sec. 7, but as, for taxation purposes, merely classifying,

into real and personal, the different kinds of property; and while Sec. 2055 enumerates "public securities" as taxable property, and while school district, and city, bonds are "public securities," yet it is not within the proper function of a legislative body to define a term that may be used in a constitution, and if the term "public securities" in said section were considered as merely an effort to define "property" such definition would be entitled to no weight, unless it appeared it was of such long standing and had been so generally accepted and acted upon as to show an approval thereof by the people.

3. **Same—"Public Securities" in Tax Law, Peoples' Understanding Of, Judicial Notice Re—Non-power of Legislature Re Characterization Of "Property."**

While Pol. Code, Sec. 2055, embracing as taxable personalty "public securities," is of long standing, (Laws 1891, Ch. 14, Sec. 4) yet it was not proven that the term "public securities" as used therein has been generally understood by the people as including our own municipal bonds; nor can the Court take judicial notice that such is a fact. Held, therefore, that the use of such term in the statute is entitled to no weight, since the Legislature did not and could not either enlarge or restrict the meaning of the term "property" as used in the Constitution.

4. **Same—"Property," Meaning of Constitution Re—Exemption, Federal Constitution, Public Policy Re.**

The term "property," as used in Const., Art. 11, includes everything of value capable of being subject of individual right or ownership; and thereunder all property, except such as is expressly exempted therein, is declared subject to taxation. And inasmuch as public securities are "property" in the common acceptance of that term, such securities are subject to taxation in this state unless some federal constitutional provision exempts them, or unless, from public policy it will be presumed the term "property" as used therein was not intended to include public securities or some class or classes thereof.

5. **Same—Municipal Bonds, Taxation Of, Whether Impairing Obligation of Contracts.**

Taxation of municipal bonds, such as school and city bonds, would not affect or impair the obligations of the contracts embraced in such securities.

6. **Same—Borrowing Money by Municipality, Whether Impairing State Sovereignty.**

The exercise by a state of its power to borrow money—the use of its credit—is per se exercise of a power almost as essential to its corporate existence as is the power of taxation; and such exercise of power leaves the state's sovereign character and all other powers incident thereto wholly unimpaired.

**7.   Same—Municipal   Securities—Instrumentality   of   Government, Taxation Of, Invalidity—State, Federal, Constitution.**

A tax upon domestic municipal securities, such as school and city bonds, is a tax on the power of the state and its instrumentality   to borrow money and it is immaterial whether the se- ·curity is issued by the state, or by a county, or by a municipality; since in either case the subject taxed is an essential instrumentality of government, and should not be crippled by the taxing power of the state itself.

**8.   Same—Municipal   Securities—Constitutional   Provision   for   Proportional Assessment, Effect Re Public Securities, Judicial Notice Of, Constitution Construed.**

Sound public policy demands that a state shall encourage her own citizens to assist her and her political subdivisions by supporting her credit, which support is best given by purchase of public securities lawfully issued by the state and political subdivision; and in view of the provision of our Constitution (Art. 11, Sec. 2) that taxed properties shall be assessed at the same proportion of their true value as all other property is assessed, and subject to the same rate of levy, the Supreme Court will take judicial notice that, to construe the Constitution (Art. 11, Sec. 2) as authorizing taxation of municipal securities, would be to drive from the markets, as prospective buyers of public securities of this state her counties and municipalities, every person or corporation resident within the state.   Therefore, held, that while the word "property" in Const., Art. 11, Sec. 2, is general enough in meaning to include such securities, yet it was. not intended by its use therein to include such securities. Held, further, that regardless of Const., Art. 11, Sec. 5, providing that the property of the United States, and of the state, county and municipal corporations, shall be exempted from taxation thereunder, yet there would, in absence of an express provision for their taxation, be a conclusive presumption that such intent was intended; and the term "property"· as found ·in the Constitution, should not be allowed its full literal import in applying said term to the subject of taxation of municipal securities or those of the federal government.

**9.   Same—"Public Securities" of Other States, Counties, Municipalities.**

The States of the Federal Union, and this State, have entered into no covenant preventing one state from taxing the public securities issued by another state, or counties, or municipalities.

**10.   Same—"Investments in Bonds," "Taxation of Property," Constitutional Provisions, Whether Including Bonds of This State, Etc.**

By ,the use of the term "investments in bonds," in Const., Art. 11, Sec. 4, and other "property," in Sec. 2, it was not in-

tended to include as taxable bonds or other public securities issued by this state, its counties or municipalities.

Appeal from Circuit Court, Hughes County. Hon. JOHN F. HUGHES, Judge.

Action by the National Surety Company, a corporation, against J. H. Starkey, as County Treasurer of Hughes County, to determine the validity of a tax upon certain public securities held by plaintiff, and for recovery back of a tax paid by it thereon. From a judgment dismissing the action, plaintiff appeals. Reversed.

*U. S. G. Cherry, (Wm. J. Griffin,* and *Walter S. Clark of counsel)*, for Appellant.

*C. C. Caldwell, Attorney General, Byron S. Payne, Assistant Attorney General,* and *Howard G. Fuller, State's Attorney,* for Respondent.

(2) To point two of the opinion, Appellant cited:

Const. Art. 2, Secs. 4, 5, 6, 7; State v. Assessors, 35 La. Ann. 654; State v. Assessors, 111 La. 982; 36 So. 91.

Respondent cited:

Hall v. Middlesex, (Mass.) 10 Allen 100.

(6) To point six, Appellant cited:

In re Gross Production Tax of Wolverine Oil Co., 154 Pac. 362.

(7) To point seven, Appellant cited:

37 Cyc. 883.

(10) To point ten, Appellant cited:

Miller v. Wilson, 60 Ga. 505; Macon v. Jones, 67 Ga. 489; Augusta v. Dunbar, 50 Ga. 387; Miller v. Wilson, 60 Ga. 505; State, ex rel, Da Ponte v. Assessors, 35 La. Ann. 651; Penick v. Foster, 129 Ga. 217; 12 Ann. Cas. 346; 12 L. R. A. (N. S.) 1159; Pollock v. Farmers Loan & Trust Co., 157 U. S. 429; 39 L. ed. 757; In re Assessment of First National Bank of Chickasha, Okla., 1916, 160 Pac. 469.

Respondent cited:

Scottish Union & Natl. Ins. Co. v. Bowland, 196 U. S. 611, 25 Sup. Ct. 345, 49 L. Ed. 619; State v. Fidelity & Deposit Co. of Maryland, (Tex.) 80 S. W. 544; People v. Home Insurance Co., 29 Cal. 533; Western Assurance Co. v. Halliday, 127 Fed. 830.

WHITING, J.  The sole question before us is: Are bonds of a municipal corporation of this state—such as of a school district or city—subject to taxation under the existing laws of this state? The trial court held that they were.

[1-3] There are no express provisions of our Constitution exempting such bonds from taxation, or authorizing such exemption. The Legislature is without any power to exempt property from taxation other than such classes of property as are mentioned in the Constitution. Article 11, § 7. Respondents contend that by section 2055, Pol. Code, the Legislature has expressly provided for the taxation of "public securities." It must, of course, be conceded that these bonds are "public securities," but an examination of sections 2054, 2055, Pol. Code, discloses that, in enacting these sections, the Legislature was not attempting to extend the scope of the term "property" as used in the Constitution, but was, for taxation purposes, merely classifying, into real and personal, the different kinds of property. Moreover, it is not within the proper functions of a legislative body to define a term that may be used in a Constitution; and, if we were to consider the use of the term "public securities" in section 2055, Pol. Code, as merely an effort to define "property," such definition of the term would be entitled to no weight unless it appeared that it was of such long standing and had been so generally accepted and acted upon as to show an approval thereof by the people. 6 R. C. L. 62. Section 2055, Pol. Code, is of long standing, being first found after statehood as section 4, c. 14, Laws 1891; but it was not proven that the term "public securities" as used therein has been generally understood by the people of this state as including the bonds of our own municipalities, and certainly we cannot take judicial knowledge that such is a fact. We are therefore of the opinion that the use of such term in the statute is entitled to no weight at our hands—the Legislature did not and could not either enlarge or restrict the meaning of the term "property" as such term is used in the Constitution of this state.

[4] And yet the term "property," as used in our Constitution (article 11), is broad enough to include everything of value, tangible or intangible, capable of being the subject of individual right or ownership, and under our Constitution all property, except such as is expressly exempted therein, is declared to be sub-

ject to taxation. Ewert v. Taylor 38 S. D. 124, 160 N. W. 797. Inasmuch as public securities are "property," in the common acceptation of that term, it would follow that such securities are subject to taxation in this state unless some provision of the federal Constitution renders them exempt, or unless, because of some controlling rule of public policy—some superior intervening right or reason—it will be presumed·that the term "property," as used in the Constitution, was not intended to include public securities or some class or classes thereof.

[5, 6] It has oft been urged that neither a state nor any of its counties or municipalities could be allowed to tax bonds issued by themselves, because it was contended that to do so would be to impair the obligation of the contracts—that such a corporation could not be allowed to enter into an obligation to pay a debt and interest and then destroy such obligation in whole or in part by taxing same. We are not impressed with the soundness of the reasoning advanced in support of such contention and fully agree with the leading authority, Champaign County Bank v. Smith, 7 Ohio, St. 42, and the numerous authorities that have followed it, in holding that to tax such a bond would not be to impair the obligation of the contract. We are of the opinion that, if there were not some other superior reason resting upon the sovereign rights of the state, that requires us to hold that the word "property," as used in our Constitution, was not intended to include bonds issued by this state, her counties or her municipalities, we should be bound to hold with the trial court. We cannot agree with the court in Champaign County Bank v. Smith, supra, that "the simple contract of borrowing money has no relation to her (the state's) sovereign character or power," because we believe that the exercise by a state of its power to borrow money (the use of its credit) is in and of itself the exercise of a power almost as essential to its corporate existence as is the power of taxation; but we do agree with that court that the exercise of this most essential power (that of using its credit) leaves its sovereign character and all other powers incident thereto wholly unimpaired.

[7] The courts which have held such bonds taxable, in the absence of a constitutional provision expressly declaring them subject to taxation, have, to our minds, failed to give due consid-

eration to the fact that, by so holding, they have ruled that it was the intent of the Constitution that, by the exercise of one of its sovereign powers, one of its instrumentalities of government, the state should cripple another power, another of its instrumentalities of government. As was said by Chief Justice Marshall in Weston v. Charleston, 2 Pet. 449, 468 (7 L. Ed. 481):

"The right to tax the contract to any extent, when made, must operate upon the power to borrow, before it is exercised, and have a sensible influence on the contract."

In the great case of Pollock v. Farmers' L. & T. Co., 157 U. S. 429-586, 15 Sup. Ct. 673, 39 L. Ed. 759, the court was a unit in holding a tax on the income or interest from municipal securities to be invalid, and, in addition to what was quoted from the Weston Case, said:

"The tax in question is a tax on the power of the states and their instrumentalities to borrow money."

In Penick v. Foster, 129 Ga. 217, 53 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346, it is said:

"Nothing is better settled than that securities issued by the government are as much the instrumentalities of the government as other means adopted by it to perform its functions. It is immaterial whether the security be issued by the state, or by a county, or by a municipality. It is, in all cases, an instrumentality of the government. It is issued for the purpose of effectuating those objects for which governments exist."

In Re Assessment of First Nat. Bk. (Okl.) 160 Pac. 469, L. R. A. 1917B, 294, the court says:

"When a state issues its bonds in conformity to law in order to raise money to accomplish and carry out a governmental purpose, the instruments issued by it for that purpose are instrumentalities of government."

In Farmers' Bank v. Minn., 232 U. S. 516, 34 Sup. Ct. 354, 58 L. Ed. 706, the court says:

"We deem it entirely clear that a tax upon the exercise of the function of issuing municipal bonds is a tax upon the operations of the government. * * * And to tax the bonds * * * in the hands of the holders is, in the last analysis, to impose a tax upon the right of the municipality to issue them."

In Penick v. Foster, supra, the court further says:

"If a municipal bond is 'property' within the meaning of that term as used in the Constitution, and is made subject to taxation by the terms of the Constitution itself, such bond is subject to taxation in the hands * * * of the municipality issuing it, as well as elsewhere in the state. * * * If the Constitution, of its own force, requires the state to collect the taxes upon municipal bonds, by parity of reasoning it requires a county or municipality to collect taxes upon state bonds. If it does not require a municipality to collect the taxes on its own bonds, then it would not require the state to collect the taxes upon the bonds of its municipalities."

[8] It seems to us inconceivable that the people of this state in adopting our Constitution intended that one of the most essential instrumentalities of our state government—the use of its credit—should be crippled by the taxing power of the state itself. Sound public policy demands that a state shall, in every legitimate method, encourage her own citizens to assist her and her political subdivisions by supporting her credit, which support can best be given by the purchase of the public securities lawfully issued by such state and political subdivisions. Among the express provisions of our Constitution in force when this case arose is one which would require such securities, if taxed, to be assessed at the same proportion of their true value as all other property is assessed and subject to the same rate of levy. This court cannot but take judicial notice that, to construe our Constitution as contended for by respondent, and to then enforce the other provisions thereof, would be to drive from the markets, as prospective buyers of the public securities of this state, her counties, and her municipalities, every person or corporation resident within this state. We therefore fully agree with the following from the opinion in Re Assessment of First Nat. Bk., supra:

"By the provision against exemption from taxation, it was not intended to deny to the state an exercise of sovereignty so necessary and essential to the due and orderly administration of its affairs. It was not intended thereby to deny to the state the power to go upon the open money markets of the world and compete for money upon equal terms with other sovereign states; or to deny to the state the power to provide a security of equal

attractiveness to its own citizens, with that of other state governments of no better credit."

In Mercantile Bk. v. New York, 121 U. S. 138, 162, 7 Sup. Ct. 826, 839 (30 L. Ed. 895), the court says of such public securities:

"It is not a part of the policy of the government which issues them to subject them to taxation for its own purposes."

We therefore conclude that, while the word "property" is general enough in its meaning to include securities issued by this state, her counties, and her municipalities, it was not intended by its use in our Constitution to include such securities. All must concede that, even though we did not have section 5, art. 11, of our Constitution, expressly exempting the property of the United States, of this state, and of her county and municipal corporations, yet there would, in the absence of an express provision for their taxation, be a conclusive presumption that such exemption was intended—it would certainly border on the ridiculous for a state to go to the expense of assessing levying, and collecting taxes of herself. So we say, in support of our view as was said in the leading case of State ex rel. Da Ponte v. Board of Assessors, 35 La. Ann. 651:

"Nor can it be successfully opposed to this view that the words, 'all property shall be taxed,' are too clear and unambiguous to leave room for construction. On the contrary, such general terms and expressions are constantly subjected to construction, and it may be said that they are never allowed their full literal import. To do so would be to extend their intent to subjects which the state has clearly no power to tax, such as bonds of the United States, and other means and instruments for the exercise of the powers delegated to the Federal government; and to other subjects, such as the salaries of judges, public property (though this is expressly exempted), and the like, which, though it is within the power of the state to tax, are yet considered on fundamental principles to be nontaxable."

[9] We do not wish to be understood as holding that no "public securities" are taxable, and that therefore such term had no proper place in section 2055, Pol. Code. In Bonaparte v. Tax Court, 104 U. S. 592, 26 L. Ed. 845, it was held that the states had entered into no covenant preventing one state from taxing

the public securities issued by another state, her counties, or municipalities.

[10] We have not overlooked section 4, art. 11, which directs that the Legislature shall provide for the taxing of "investments in bonds," but simply hold that all the reasons hereinbefore announced for holding that, by the use of the word "property," it was not intended to include as taxable the bonds issued by this state, its counties, or municipalities, it also was not intended by the use of the word "bonds" in such section to include the public securities issued by this state, its counties or its municipalities.

To summarize in a few words our conclusion: If we were to consider the bonds before us merely as property and disregard the purpose for which they were issued—disregard the fact that they are governmental instrumentalities—we should hold them taxable; but, when we regard them, not merely as property, but as governmental instrumentalities of a sovereign state, a superior intervening public policy grounded upon one of the sovereign powers of the state compels us to the conclusion (there being no express language in the Constitution to the contrary) that the public securities of a state, and of its counties and municipalities were not intended to be included either in the term "property" or the term "bond" as such terms are used in that article of our Constitution relating to taxation.

The judgment of the trial court is reversed, and such court is directed to enter a judgment in favor of appellant. No costs to be taxed in this court.