197 S.W.3d 557 (2006)
George W. DAVIS and Catherine V. Davis, Appellants,
v.
DEPARTMENT OF REVENUE OF THE FINANCE AND ADMINISTRATION CABINET, Commonwealth of Kentucky (Formerly Commonwealth of Kentucky, Revenue Cabinet) and Commonwealth of Kentucky Finance and Administration Cabinet, Appellees.
No. 2004-CA-001940-MR.
Court of Appeals of Kentucky.
January 6, 2006.
Discretionary Review Denied by Supreme Court August 17, 2006.
*559 Irvin D. Foley, David W. Gray, Anthony Raluy, Louisville, KY, John R. Wylie, Chicago, IL, for Appellants.
Douglas M. Dowell, Frankfort, KY, for Appellees.
Before BARBER, MINTON, and TAYLOR, Judges.

OPINION
MINTON, Judge.

I. INTRODUCTION.
George and Catherine Davis appeal from the Jefferson Circuit Court's grant of summary judgment in favor of the Department of Revenue of the Finance and Administration Cabinet for the Commonwealth of Kentucky ("the Department"). Because we find that Kentucky's tax on the income derived from bonds issued outside Kentucky violates the Commerce Clause of the United States Constitution, we vacate and remand.

*560 II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.
Although the legal theories involved are quite complex,[1] the pertinent facts of this case are simple. Kentucky Revised Statute (KRS) 141.020 governs individual state income taxes. Similar provisions exist for the Commonwealth to tax estates, trusts, and fiduciaries,[2] as well as corporations.[3] KRS 141.020 requires an individual to pay state taxes upon a percentage of that person's net income.[4] For individuals, net income is determined by making certain deductions from the individual's adjusted gross income.[5] In turn, an individual's adjusted gross income is derived by making certain deductions from a person's gross income "as defined in Section 61 of the Internal Revenue Code."[6] In arriving at its definition of gross income, the Internal Revenue Code specifically exempts interest earned on any state or local bond.[7] But Kentucky law requires that "interest income derived from obligations of sister states and political subdivisions thereof" is to be included in a person's adjusted gross income.[8] The cumulative impact of those various statutes is that Kentucky exempts from taxation interest income derived from bonds issued by the Commonwealth of Kentucky or its subdivisions but requires taxes to be paid on interest income derived from bonds issued by a sister state or its subdivisions.
In April 2003, the Davises filed a class action declaratory judgment complaint alleging that Kentucky's decision to tax the income earned on out-of-state bonds in this manner violates the Commerce Clause of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. To attempt to demonstrate standing, the Davises alleged in their complaint that they were residents of Jefferson County who had paid Kentucky income tax on the income they earned from out-of-state bonds.
In July 2003, before the Davises had filed a motion for class certification, the Department filed a motion for summary judgment arguing that the tax system in issue was constitutional and that, furthermore, the Davises lacked standing to challenge the tax provisions applicable to corporations, estates, and trusts. In August 2004, the Jefferson Circuit Court granted the Department's motion for summary *561 judgment on both the constitutionality of the bond taxation system and the question of the Davises' standing. The Davises filed this appeal.

III. ANALYSIS.
The Davises' appeal presents two issues. First, did the trial court correctly grant summary judgment to the Department on the Davises' claim that Kentucky's system of taxing only out-of-state bonds is unconstitutional? Second, did the trial court correctly find that the Davises lacked standing to assert claims on behalf of corporations, trusts, estates, and all other non-individual plaintiffs? Following a recitation of the applicable standards of review, each question will be addressed separately.

A. Standard of Review.
Summary judgment is appropriate only if the Department showed that the Davises "could not prevail under any circumstances."[9] In ruling on a motion for summary judgment, we must view the evidence in the light most favorable to the Davises.[10] An appellate court reviewing a grant of summary judgment must determine whether the trial court correctly found that there were no genuine issues of material fact.[11] As findings of fact are not at issue, the trial court's decision is entitled to no deference.[12]

B. Constitutionality of Kentucky's Taxation System.
"The test of the constitutionality of a statute is whether it is unreasonable or arbitrary."[13] A statute is constitutionally valid "if a reasonable, legitimate public purpose for it exists, whether or not we agree with its `wisdom or expediency.'"[14] The Davises' burden is heavy as "[a] strong presumption exists in favor of the constitutionality of a statute."[15]
Bearing those principles in mind, we now turn our attention to the Davises' contention that Kentucky's system of taxing only extraterritorial bonds violates the Commerce Clause of the United States Constitution.[16] This issue is a matter of first impression in Kentucky.[17]
*562 The Commerce Clause simply provides that Congress has the power to "regulate Commerce with foreign Nations, and among the several States[.]"[18] But despite the fact that the Commerce Clause "is phrased merely as a grant of authority to Congress to `regulate Commerce ... among the several States,' Art. I, § 8, cl. 3, it is well established that the Clause also embodies a negative command forbidding the States to discriminate against interstate trade."[19] This "negative" or dormant aspect of the Commerce clause "prohibits economic protectionism  that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[20] Thus, the "fundamental command"[21] of the Commerce Clause is that "a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State."[22] As a result, "[s]tate laws discriminating against interstate commerce on their face are `virtually per se invalid.'"[23]
Clearly, Kentucky's bond taxation system is facially unconstitutional as it obviously affords more favorable taxation treatment to in-state bonds than it does to extraterritorially issued bonds.[24] Thus, Kentucky's bond taxation system may be found to be constitutionally valid only if it falls within an exception to the normal rule requiring laws that violate the Commerce Clause on their face to be stricken.[25] So we must evaluate the Department's three main arguments in support of Kentucky's taxation system to determine if the Department has met its burden to show that the taxation system in question is constitutionally permissible.[26]
*563 First, one of the Department's main arguments in favor of Kentucky's taxation system is the fact that a similar system has been held to be constitutionally permissible in Ohio. In fact, despite the discriminatory bond taxing system's widespread use and obvious Commerce Clause implications,[27] apparently, only the Ohio courts have been presented with a case challenging it on Commerce Clause grounds.[28] The Ohio Court of Appeals ultimately concluded in Shaper that the bond taxation system was constitutionally permissible. But that court failed fully to analyze the issue. Shaper, though containing a well-written preliminary analysis of the Commerce Clause implications of this discriminatory bond taxing system, "made no attempt to explain why ... a tax exemption that discriminates against income earned from out-of-state bonds ... is permissible under the Commerce Clause."[29] Rather, the Shaper court "tersely stat[ed], in effect, that `we looked and did not find anything so therefore it must be constitutional.'"[30] Logic dictates, however, that a potentially problematic and constitutionally infirm statute does not become permissible simply because it has not been previously found to be unconstitutional. Rather, a court faced with a direct constitutional challenge to a statute must engage in a searching inquiry to determine whether a challenged statute can pass constitutional muster.[31] Thus, Shaper, though instructive in certain areas, is, in and of itself, insufficient to support the Department's position, meaning that we must examine the Department's other two main arguments.
The Department next argues that the bond taxation system must be found to be constitutional under the Supreme Court's holding in Bonaparte v. Tax Court.[32] In Bonaparte, a taxpayer contended that her state of residence was required by the Full Faith and Credit Clause of the United States Constitution[33] to exempt out-of-state bonds from taxation because the issuing state exempted them. The Supreme Court rejected the taxpayer's argument, holding that "no provision of the Constitution of the United States ... prohibit[ed] *564 such taxation."[34] However, Bonaparte is ultimately of little value to the case at hand because the Commerce Clause played no role in the Bonaparte court's decision.[35] As the case at hand involves a direct challenge under the dormant Commerce Clause and has nothing to do with the Full Faith and Credit Clause, it logically follows that Bonaparte is neither on point nor controlling.
Finally, the Department relies upon the market participant doctrine to save Kentucky's bond taxation system. The market participant theory "recognizes that when a sovereign acts as a consumer or vendor in commerce, its actions as a market participant are distinct from its actions as a market regulator. The Commerce Clause is directed at the state's actions as a market regulator; therefore, [a State's] actions as a market participant are exempted from Commerce Clause analysis."[36] Stated differently, the market participant theory "differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the negative Commerce Clause. Thus, for example, when a State chooses to manufacture and sell cement, its business methods, including those that favor its residents, are of no greater constitutional concern than those of a private business."[37]
The Department's market participant argument is unavailing, however. No one could seriously argue against the principle that Kentucky acts as a market participant when it issues bonds. But Kentucky's issuance of bonds is not the issue. Rather, the sole issue is Kentucky's decision to tax only extraterritorial bonds. Thus, the market participant theory is inapplicable as a State's "assessment and computation of taxes" is, clearly, "a primeval governmental activity."[38] Accordingly, "when a state chooses to tax its citizens, it is acting as a market regulator[,]" not as a market participant.[39] Therefore, the Department's market participant argument is without merit.
Having found that the Department's arguments are unavailing, we are left with a situation in which Kentucky's bond taxation scheme is facially unconstitutional under the Commerce Clause; and none of the arguments in favor of its constitutionality offered by the Department or relied upon by the trial court are sufficient to save it. But under the facts presented in this case, we have no choice but to find that Kentucky's system of taxing only extraterritorial bonds runs afoul of the Commerce Clause.[40] Thus, the trial court's *565 decision to grant summary judgment to the Department was erroneous.[41]

B. Standing.
The trial court found that the Davises lacked standing to assert claims on behalf of all non-individual claimants (i.e., corporations, trusts, estates, etc.) because they had not shown that they had been forced to pay any taxes on extraterritorial bonds on behalf of those types of entities. On appeal, the Davises contend that the trial court confused the concept of standing with the somewhat related issues involved in class certification. We agree.
Class actions in Kentucky are governed by Rules of Civil Procedure (CR) 23.01-23.04. The Davises' complaint sets forth their intention to prosecute their claims as a class action on behalf of all individuals, corporations, trusts, estates, etc. CR 23.03(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Thus, "[i]n a class action a plaintiff generally files a motion seeking certification of the class even though this is not expressly required by statute or rule."[42] In the case at hand, the Davises had not filed a motion for class certification before the Department filed its motion for summary judgment. So any issues regarding the propriety of class certification were not before the trial court. Rather, the only issues before the trial court were whether the bond taxation system in question was constitutional and whether the Davises had basic standing to file the action.
The question of standing only goes to whether an individual is entitled to have his or her claims resolved by a court.[43] Thus, although standing is a threshold issue and a prerequisite for all actions, in order to demonstrate standing, a party need only show that a case or controversy exists between that party and the defendant.[44] Only after a plaintiff has established personal standing in a putative class action may a court consider the separate issue of whether the plaintiff will be able to represent the proposed class adequately under the guidelines of CR 23.01-23.04.[45]
In the case at hand, the trial court found that the Davises had personal standing to assert claims regarding the bond taxation issue.[46] Thus, the Davises have standing. The question of whether the Davises may properly represent corporations, trusts, and estates comes into play only when the issue of class action certification is presented. Thus, the portion of the trial court's opinion finding that the Davises lack standing is vacated. Upon remand, the Davises will, presumably, quickly move for class certification, at *566 which time, the trial court may determine all of the issues involved in resolving such a matter, including whether the Davises can properly represent any corporations, trusts or estates.[47]

IV. CONCLUSION.
For the foregoing reasons, the Jefferson Circuit Court's order granting summary judgment to the Department of Revenue is vacated; and this case is remanded for further proceedings consistent with this opinion.
ALL CONCUR.
NOTES
[1] Indeed, even the United States Supreme Court once declared its own jurisprudence involving the dormant Commerce Clause to be a "quagmire" which left "much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation." Northwestern States Portland Cement Co. v. State of Minn., 358 U.S. 450, 457-458, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).
[2] KRS 141.030.
[3] KRS 141.040.
[4] KRS 141.020(1); KRS 141.030(1); KRS 141.040(1).
[5] KRS 141.010(11) provides that "`[n]et income' in the case of taxpayers other than corporations means adjusted gross income as defined in subsection (10) of this section, minus the standard deduction allowed by KRS 141.081, or, at the option of the taxpayer, minus the deduction allowed by KRS 141.0202. . . ."
[6] KRS 141.010(9),(10). Section 61 of the Internal Revenue Code is codified at 26 U.S.C. § 61.
[7] 26 U.S.C. § 103 provides that "gross income does not include interest on any State or local bond."
[8] KRS 141.010(10)(c). Similarly, "interest income derived from obligations of sister states and political subdivisions thereof" is included in a corporation's gross income. KRS 141.010(12)(c).
[9] Steelvest, Inc. v. Scansteel Service Center, Inc., 807 S.W.2d 476, 480 (Ky.1991) (citing Paintsville Hosp. Co. v. Rose, 683 S.W.2d 255 (Ky.1985)).
[10] Id.
[11] Scifres v. Kraft, 916 S.W.2d 779, 781 (Ky. App.1996).
[12] Id.
[13] Buford v. Commonwealth, 942 S.W.2d 909, 911 (Ky.App.1997).
[14] Id. (quoting Walters v. Bindner, 435 S.W.2d 464, 467 (Ky.1968)).
[15] Id.
[16] We note that we have the authority to resolve this dispute even though it revolves entirely around interpreting the United States Constitution. See Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 320-321, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) ("We agree, of course, that state courts of general jurisdiction have the power to decide cases involving federal constitutional rights where, as here, neither the Constitution nor statute withdraws such jurisdiction.")
[17] Both the Davises and the Department cite other cases in support of their positions. However, with the exception of a case from Ohio (which will be discussed at length infra), none of the cited cases are of much significance or help because they are not factually nor legally on all fours with this action. See, e.g., Scott K. Attaway, Note, The Case for Constitutional Discrimination in Taxation of Out-of-State Municipal Bonds, 76 B.U. L.Rev. 737, 769 (1996) ("State tax exemption of income earned by residents in transacting with the state does not fall neatly within any of the Supreme Court's established Commerce Clause doctrines."). Therefore, we will not belabor this opinion by specifically distinguishing each case cited to us as the statement of points and authorities in the parties' briefs total thirteen pages.
[18] U.S. Const., Art. I, § 8, cl. 3.
[19] Associated Industries of Missouri v. Lohman, 511 U.S. 641, 646, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994).
[20] New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).
[21] Lohman, 511 U.S. at 647, 114 S.Ct. 1815.
[22] Armco Inc. v. Hardesty, 467 U.S. 638, 642, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984).
[23] Fulton Corp. v. Faulkner, 516 U.S. 325, 331, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996).
[24] Even an author who believes that the separate tax status of in-state and out-of-state bonds should be constitutionally permissible agrees that a bond taxation system like Kentucky's is facially unconstitutional. See Attaway, 76 B.U. L.Rev. at 739 (1996) ("If subjected to traditional Commerce Clause scrutiny, such discriminatory tax treatment [of bonds] would surely fall under a `virtually per se rule of invalidity.'") (quoting Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)).
[25] Limbach, 486 U.S. at 274, 108 S.Ct. 1803 ("Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.") (internal citations omitted).
[26] C & A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, 392, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) ("Discrimination against interstate commerce in favor of local business or investment is per se invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest."). See also Hughes v. Oklahoma, 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) (holding that the Court would apply the "strictest scrutiny" to determine if a statute which violates the Commerce Clause on its face was, nevertheless, permissible based upon the State's arguments); Limbach, 486 U.S. at 278-279, 108 S.Ct. 1803 (discussing the state's high burden in showing that a statute which violates the Commerce Clause on its face is not invalid because there was no reasonable nondiscriminatory alternative).
[27] At the time Mr. Attaway's law review note was published, at least thirty-seven states had bond taxation systems similar to Kentucky's. See 76 B.U. L.Rev. at 738.
[28] Shaper v. Tracy, 97 Ohio App.3d 760, 647 N.E.2d 550 (1994).
[29] 76 B.U. L.Rev. 738, n. 6.
[30] Id. Mr. Attaway's critique of Shaper is correct because the Shaper court, after examining various theories and inapplicable cases, simply stated its conclusion as follows: "Given the lack of any precedent to apply the Commerce Clause to this type of taxation scheme, we are unable to find R.C. 5747.01 [the Ohio statute in question] unconstitutional as violative of the Commerce Clause." Shaper, 647 N.E.2d at 553-554.
[31] Faced with a similar Commerce Clause challenge to a Kentucky system that taxed out-of-state bank deposits at a higher rate than in-state deposits, the Kentucky Supreme Court opined that a court could not shirk its duty fully to apply the law. Rather, a reviewing court "must enforce constitutional limitations." St. Ledger v. Commonwealth, 912 S.W.2d 34, 39 (Ky.1995), (vacated on other grounds by St. Ledger v. Kentucky Revenue Cabinet, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996)).
[32] 104 U.S. 592, 26 L.Ed. 845 (1881).
[33] Article IV, Section 1 of the United States Constitution provides in relevant part that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."
[34] Id. at 104 U.S. at 594, 26 L.Ed. 845.
[35] See, e.g., Donald H. Regan, Siamese Essays: (I) CTS Corp. v. Dynamics Corp of America and Dormant Commerce Clause Doctrine; (II) Extraterritorial State Legislation, 85 Mich. L.Rev. 1865, 1887-1888 (1987) ("The Court in Bonaparte cites no constitutional provision in support of its claim that states cannot legislate extraterritorially. And quite properly not, since the extraterritoriality principle is not to be localized in any single clause. In particular, it is clear that the extraterritoriality principle as it appears in Bonaparte is not based on the commerce clause."); Shaper, at 765, 647 N.E.2d 550 (discussing Bonaparte's holding and noting that it was not based on the Commerce Clause).
[36] Shaper, at 763, 647 N.E.2d 550.
[37] Limbach, 486 U.S. at 277, 108 S.Ct. 1803 (internal citations omitted).
[38] Id.
[39] Shaper, at 764, 647 N.E.2d 550.
[40] As noted previously, although the cases are distinguishable, Kentucky Courts have previously struck down legislation for violating the Commerce Clause, such as when the Kentucky Supreme Court struck down statutes providing for different levels of ad valorem taxation on in-state and out-of-state bank deposits. See St. Ledger, 912 S.W.2d 34, and St. Ledger v. Commonwealth, 942 S.W.2d 893 (Ky.1997).
[41] The trial court made no explicit findings regarding the Davises' Equal Protection arguments. Given our Commerce Clause analysis, we also find it unnecessary to engage in an Equal Protection analysis.
[42] 59 Am.Jur.2d Parties § 98 (2002).
[43] See, e.g., Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410, 422 (6th Cir.1998).
[44] Id. at 422-423.
[45] Id. at 423.
[46] The trial court's summary judgment order states that "[t]he plaintiffs do maintain standing in regard to KRS 141.020, which relates to an individual income tax paid by them." Appellants' Brief, Appendix 3, p. 4.
[47] The Davises ask us to order the trial court to certify this as a class action. We decline that invitation, however, as such an issue is one which must be initially determined by the trial court.