In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-1887

KAREN SCALIN, ROLAND CHERRIER, and JOSIANE PIQUARD,

*Plaintiffs-Appellants*,

*v.*

SOCIÉTÉ NATIONALE SNCF SA, formerly known as Société Nationale des Chemins de fer Français,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 3362 — **Andrea R. Wood**, *Judge*.

---

ARGUED JANUARY 18, 2019 — DECIDED AUGUST 6, 2021

---

Before EASTERBROOK and SCUDDER, *Circuit Judges*.[*]

EASTERBROOK, *Circuit Judge*. During World War II the Nazi regime in Germany and nations under its domination killed millions of Jews. Plaintiffs in this suit are descendants of Jews

[*] Associate Justice Barrett heard argument in this appeal while she was a member of this court. She did not participate in the decision, which is being rendered by a quorum of the panel. 28 U.S.C. §46(d).

rounded up in France after it signed an armistice with Germany in 1940. According to the complaint, persons being sent to death camps were loaded on trains operated by the French national railroad, now known as Société Nationale SNCF. The passengers' belongings were stolen by railroad workers and handed over to the Nazis. This suit seeks compensation for those thefts.

One can imagine many possible responses, including the statute of limitations. World War II ended more than 75 years ago. Then there is the fact that the complaint does not allege any misconduct within the United States or by a U.S. national. The crimes were committed in Europe, by Europeans, against Europeans. The only defendant, SNCF, operates its railroad in Europe and is not alleged to have committed any wrong in the United States. Still, plaintiffs insist, victims and their descendants may use the U.S. courts to seek damages for foreign wrongs, when the allegations concern "rights in property taken in violation of international law". 28 U.S.C. §1605(a)(3). This is the expropriation exception to the Foreign Sovereign Immunities Act (FSIA). The Act generally forbids courts of this nation to award damages against foreign sovereigns (including their instrumentalists, such as SNCF), but the expropriation exception is one of several exceptions to this norm.

The district court dismissed the complaint, but not for any of these reasons. It held instead that plaintiffs must seek their remedy under a French administrative-claims system that has been devised to compensate victims of the Nazi occupation and the Vichy regime. 2018 U.S. Dist. Lexis 48805 (N.D. Ill. Mar. 26, 2018). It relied on *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012), and *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015), which conclude that, to the

extent foreign nationals can seek compensation in U.S. courts for property expropriated during a campaign of genocide, a federal tribunal may abstain in favor of compensation systems offered in the nation where the wrongs occurred. *Abelesz* and *Fischer* sometimes referred to this as exhaustion of administrative remedies, but the opinions did not contemplate a follow-up in which a federal judge would superintend the decisions of the foreign tribunals. Comity-based abstention is therefore a more apt description. Whether the French system of compensation for wartime thefts justifies abstention was the principal subject briefed and argued in our appeal.

Before the appeal was argued here, the D.C. Circuit disagreed with *Abelesz* and *Fischer*, holding that abstention is never proper. See *Philipp v. Germany*, 894 F.3d 406 (D.C. Cir. 2018), rehearing en banc denied, 925 F.3d 1349 (2019); *Simon v. Hungary*, 911 F.3d 1172 (D.C. Cir. 2018). We deferred resolution of the appeal while the Supreme Court considered those cases. But the eventual opinion bypassed the possibility of abstention and held that the expropriation exception cannot be used by a person whose own nation took property. *Germany v. Philipp*, 141 S. Ct. 703 (2021).

Shortly after the Justices released the opinion in *Philipp*, plaintiffs asked us to remand so that the district court could consider the possibility that one or more of the plaintiffs' predecessors in interest was not a French citizen at the time of the thefts, either because the victim was a citizen of some other nation who had become a refugee in France or because the Vichy regime and the German forces that administered the occupied zone in France treated Jews as stateless. A remand for that purpose also would have posed the question whether the issue had been forfeited by plaintiffs' delay in raising the

subject of the victims' citizenship. And it would have left open the principal question briefed on appeal—whether international comity means that plaintiffs' claims should be resolved in France.

A remand also would have left open a subject that had been discussed at oral argument and in post-argument briefs: What is the plaintiffs' claim in the first place? This is a triple-foreign suit: plaintiffs allege that nationals of a country other than the United States were injured by a foreign entity (SNCF) in a foreign nation (France). Plaintiffs say that one of their number is a U.S. citizen, but they do not contend that any of them was injured by wrongful acts in France. They describe themselves as the heirs (children or grandchildren) of the victims. The fact that a foreign national's claim has been transferred to a U.S. citizen does not make it less a foreign claim.

Suppose B accuses A of a tort (such as conversion) in Massachusetts. B dies, and the claim passes to C as a matter of state law. May C then sue A in Illinois, where C lives but none of the wrongful conduct occurred? The answer is no. The proper location of a suit depends on the original acts, not on the plaintiff's current residence. See, e.g., *Walden v. Fiore*, 571 U.S. 277 (2014); *Stafford v. Briggs*, 444 U.S. 527 (1980). The principle is the same when the tort of conversion occurs in France rather than Massachusetts.

In light of these considerations, we told the parties that we would wait for the Supreme Court's decision in *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021), which might shed light on where triple-foreign suits may be litigated. *Nestlé* turned out to reiterate the proposition that the Alien Tort Statute, 28 U.S.C. §1350, does not provide a remedy for triple-foreign events and does not apply when the wrongful acts are

unconnected to the United States or its citizens. See *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013). *Nestlé* adds that this rule cannot be sidestepped by asserting that a company in the United States aided and abetted foreign wrongs. Cf. *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) (no jurisdiction in United States over triple-foreign securities offenses). Likewise it cannot be sidestepped by transferring to a U.S. citizen a foreign national's claim against a foreign entity for injury suffered abroad. What's more, *Jesner v. Arab Bank PLC*, 138 S. Ct. 1386 (2018), holds that a foreign corporation such as SNCF cannot be a defendant in a suit under §1350.

Section 1350 therefore does not offer plaintiffs a claim for relief in federal court. Nor does state law. The problem is not simply that Illinois (the state in which the federal court sits, and to whose law it would look) has not created any claim against foreign nationals for foreign acts. It is also that no state possesses regulatory jurisdiction over such matters. The Supreme Court made that point long ago in *Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881). See also *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 571 (1996).

In a memorandum filed after *Nestlé*, plaintiffs tell us that it, its predecessors, and all other triple-foreign decisions, are irrelevant. This is so, plaintiffs assert, because their claim rests on the expropriation exception to the Foreign Sovereign Immunities Act. To state this position is to expose the problem: How can a substantive claim rest on an exception to a statute that in the main denies jurisdiction to domestic courts?

Section 1604 states the basic rule: "Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States

and of the States except as provided in sections 1605 to 1607 of this chapter." Section 1605(a)(3), the expropriation exception, is an exception to §1604. But that's all. Section 1605(a)(3) does not create a substantive claim. A provision that a foreign nation lacks sovereign immunity to a particular claim leaves a plaintiff in need of both jurisdiction and of a substantive entitlement to relief. This is the norm in domestic law. A waiver of sovereign immunity does not create a substantive claim; the plaintiff still needs jurisdiction and a statute authorizing relief. See, e.g., *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). Nothing in the Foreign Sovereign Immunities Act implies a different approach.

Jurisdiction in a suit such as this comes from 28 U.S.C. §1330(a), which grants jurisdiction of suits against foreign nations whenever the Foreign Sovereign Immunities Act permits. This allows litigation even with respect to acts that occurred during or shortly after World War II (and thus before the Act was adopted). See *Austria v. Altmann*, 541 U.S. 677 (2004). But the need for a substantive claim remains. To repeat: That is the norm for domestic waivers of sovereign immunity (see *Navajo Nation*). The Foreign Sovereign Immunities Act is about, well, sovereign immunity. All of the Supreme Court's decisions about the Act treat §1605 as a jurisdictional provision, not as a source of substantive rights. See, e.g., *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 489 (1983); *Venezuela v. Helmerich & Payne International Drilling Co.*, 137 S. Ct. 1312, 1318–19 (2017).

The expropriation exception to §1604 sits near 28 U.S.C. §1605A(c), which *does* create a substantive claim for injuries attributable to terrorism. See *Opati v. Sudan*, 140 S. Ct. 1601 (2020). Section 1605A(c) begins: "A foreign state that is or was

a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable … ." The difference in the language of §1605(a)(3) and §1605A(c) is stark, and a court should not read the jurisdictional words of the former to do the substantive work of the latter.

Section 1350 is the only general grant of authority for the federal courts to provide a remedy in an alien's tort action, yet plaintiffs concede that it does not support their suit. For many victims of expropriation, state law could supply the claim for relief. A citizen of the United States who invests in foreign property through a domestic contract may have a claim based on that contract if a foreign nation expropriates the property. For other takings a federal statute also may provide relief, as §1605A(c) does for terrorism. Many if not most of the expropriation claims litigated under §1605(a)(3) have a strong domestic link that may support both jurisdiction and a right of action in this nation. Perhaps federal common law, incorporating customary international law, would supply a substantive claim when the expropriation has a link to the United States, but plaintiffs have not invoked federal common law. (They mention international law but do not contend that it has been incorporated into the common law of the United States.) Sometimes the expropriated property, or assets traceable to it, is present in the United States, so that an alien's claim under §1350 (or a citizen's claim under state law) could proceed. But triple-foreign claims such as this suit lack a domestic link.

As far as we can see, neither the Supreme Court nor any court of appeals has treated §1605(a)(3) as creating a substantive claim. We do not try to fight against the statute's

jurisdictional language, so we hold that §1605(a)(3) is not substantive. Plaintiffs need a substantive claim for relief and have not pointed to one. Their complaint mentions conversion and unjust enrichment but does not identify a source of law, and we have explained why federal common law, state law, and §1350 all fall short in a triple-foreign suit such as this. Plaintiffs have only the language of the expropriation exception, which is not enough.

If plaintiffs had articulated a substantive claim, then we would agree with the district court that the remedies available in France justify abstention. The United States filed a brief articulating the view of the State Department, which agrees with the district court that international comity calls for abstention. We are reluctant to authorize litigation that calls into question the relations between the United States and one of its allies—for, as both the district court and the *amicus* brief observe, the French system was adopted in 1999 following consultation with the United States and other nations that had been allied against the Nazis during World War II. Cf. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (discussing abstention in the interest of comity).

A system in which a single district judge could countermand the decisions of multiple nations about what remedies are appropriate for wartime injuries inflicted in Europe would be unfortunate. The Executive Branch, not the Judicial Branch, is responsible for foreign relations. One can only imagine the fury in this nation if a French judge were to prescribe how much the United States must pay, and to whom, for the removal of Japanese Americans from the West Coast during World War II or the Trail of Tears in the nineteenth century. Each nation can decide for itself (unilaterally or through

treaties) whether reparations for long-past injuries are appropriate. But because plaintiffs lack a substantive claim in this triple-foreign suit, it is unnecessary to say more about international comity.

AFFIRMED