Cecil Allen **BUFORD**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

No. 95–CA–1923–MR.

Court of Appeals of Kentucky.

April 11, 1997.

Kate D. Dunn, Lexington, for Appellant.

A.B. Chandler III, Attorney General, Courtney A. Jones, Assistant Attorney General, Frankfort, for Appellee.

Before BUCKINGHAM, GARDNER and MILLER, JJ.

## OPINION

BUCKINGHAM, Judge.

After a trial by jury in the Fayette Circuit Court, Cecil Buford was convicted of two counts of trafficking in a simulated substance in violation of KRS 218A.350 and one count each of trafficking in a controlled substance in the first degree and being a persistent felony offender in the first degree. He was sentenced to six months in the county jail on each of the two counts of trafficking in a simulated substance, and the sentences were ordered to run concurrently with each other and concurrently with the sentence of five years on the charge of trafficking in a controlled substance in the first degree. Buford's sentence was enhanced to 10 years due to his guilty plea to being a persistent felony offender in the first degree. Buford appeals on two grounds, neither of which has merit.

On November 23, 1994, Buford sold four rocks of crack cocaine to an undercover police officer for the sum of $100. The transaction was videotaped, and the tape was shown to the jury as evidence on behalf of the Commonwealth. Buford testified at trial that he did make the transaction but that he thought the substance he sold was "flick," a street name for fake cocaine, and not cocaine. He also admitted in his testimony that he was a convicted felon.

On November 28, 1994, and November 29, 1994, Buford sold "flick" to the same undercover police officer after again representing that the substance was cocaine. He was charged and convicted of two counts of trafficking in a simulated substance in connection with these two transactions. He admitted to having committed these offenses.

Buford's first argument is that his convictions and sentences for two counts of trafficking in a simulated substance in violation of KRS 218A.350 should be vacated on the ground that this statute is unconstitutional because it fails to serve any legitimate government purpose. He alleges that there are other statutes which protect consumers from fraud and that the government has no legitimate interest in creating a law which provides punishment for a person who defrauds a drug user/purchaser by selling to him or her with the representation that the substance is a controlled substance. The Commonwealth contends that the statute is a constitutional exercise of the state's police powers.

■■■ The test of the constitutionality of a statute is whether it is unreasonable or arbitrary. *Moore v. Ward*, Ky., 377 S.W.2d 881, 883 (1964). The statute will be determined to be constitutionally valid if a reasonable, legitimate public purpose for it exists, whether or not we agree with its "wisdom or expediency." *Walters v. Bindner*, Ky., 435 S.W.2d 464, 467 (1968). The validity of KRS 218A.350 is a matter of first impression in this state. However, similar statutes have been upheld in numerous other states under the police powers theory. Some of the reasons stated by courts in other jurisdictions for upholding their simulated substance statutes are "preventing illegal drug transactions and the attendant social evils," *People v. Pharr*, 696 P.2d 235, 237 (Colo.1984); avoiding future overdoses as a user would underestimate the effects of an actual controlled substance after only taking a simulated controlled substance thereby causing him or her to take an increased dose of the actual controlled substance, *id.;* interference with a physician's ability to treat an overdose due to the confusion of the simulated substance with the actual narcotics, *State v. Duncan*, 414 N.W.2d 91, 95 (Iowa 1987); the fact that youthful counterfeit drug users may not believe any information presented in drug education programs because they will not suffer the side effects warned of in such programs when they consume counterfeit drugs, *State v. Thomas*, 428 So.2d 327, 331 (Fla.App. 1 Dist. 1983); and the benefit to organized crime due to the proliferation of the sale of fake drugs by organized racketeering networks. *Id.* Perhaps the most succinct analysis was found in *People v. Shephard*, 169 Cal.App.2d 283, 337 P.2d 214 (1959), when it was stated as follows:

> Anything which gives sustenance, solace, comfort or encouragement in the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the legislature. It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state.

*Id.* at 216–217.

■■■ The legislature has "broad discretion to determine for itself what is harmful to health and morals or what is inimical to public welfare...." *Walters, supra*, at 467. A strong presumption exists in favor of the constitutionality of a statute. *Id.* Furthermore, one who seeks to have a statute declared unconstitutional bears the burden of dispelling any conceivable basis which might justify the legislation. *Roberts v. Mooneyhan*, Ky.App., 902 S.W.2d 842, 844 (1995), citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314–15, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 222 (1993).

▮ Therefore, given the fact that KRS 218A.350 is valid if any rational reason can be found to support it, given the state's broad discretion in exercising its police powers and the numerous rational reasons given by courts in other jurisdictions to support similar statutes, and taking into account the strong presumption of constitutionality attached to a statute, Buford's argument that KRS 218A.350 is unconstitutional and that his due process rights were violated when the trial court did not declare it so must fail. KRS 218A.350 is not unconstitutional.

▮ Buford also maintains that he was entitled to a directed verdict on the charge of trafficking in a controlled substance in the first degree. He states in this regard that the Commonwealth did not prove that he intended to traffic in a controlled substance. Using the "flick" defense, he maintains that he thought he was selling fake cocaine and not actual cocaine to the undercover officer. We acknowledge that the controlling statute, KRS 218A.1412, requires that the Commonwealth prove Buford knowingly sold cocaine.

The standard of review on a motion for directed verdict on appeal is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict...." *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991).

In this case, an undercover police officer testified that Buford sold him a substance which was represented to be cocaine and which proved to be cocaine. The transaction was videotaped, and Buford took the witness stand and testified that he made the transaction. The evidence also indicated that in the transaction involving cocaine, Buford obtained the substance from a third party; whereas, in the two transactions involving the simulated substances, Buford had the substances on his person. Furthermore, Buford's credibility was in issue since he admitted that he was a convicted felon. Under the evidence, it was not clearly unreasonable for the jury to find the defendant guilty.

The judgment of the Fayette Circuit Court is affirmed.

All concur.