Gayle M. HOLBROOK Appellant

v.

LEXMARK INTERNATIONAL GROUP, INC., As Insured by Kemper; Lexmark International Group, Inc., As Insured by CNA; Ron Christopher, Director of Special Fund; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board Appellees

No. 2000–SC–0993–WC.

Supreme Court of Kentucky.

Sept. 27, 2001.

As Modified on Denial of Rehearing Feb. 21, 2002.

Diana Beard Cowden, Lexington, Counsel for Appellant.

Jo Alice Van Nagell, Lynn, Fulkerson, Nichols & Kinkel, PLLC, Lexington, Counsel for Appellee Lexmark International Group, Inc., As Insured By Kemper.

Steven R. Armstrong, P. Kevin Moore, Boehl, Stopher, & Graves, LLP, Lexington, Counsel for Appellee Lexmark International Group, Inc., As Insured By CNA.

M. Ronald Christopher, Joel D. Zakem, Labor Cabinet, Special Fund, Frankfort, Counsel for Appellee Christopher.

## OPINION OF THE COURT

The claimant sought benefits for a work-related gradual injury on June 9, 1998. She had first obtained treatment for her symptoms in 1994, was advised that her complaints were probably work-related, was prescribed wrist splints to wear while working, and she informed her employer in December, 1994. Furthermore, there was evidence that on February 15, 1995, she was informed of her diagnosis and its cause and that restrictions were imposed. Thus, an Administrative Law Judge (ALJ) determined that a gradual injury became manifest no later than February 15, 1995, more than two years before the claim was filed. Although concluding that the 1995 injury was barred by the period of limitations and rejecting an argument that an expired period of limitations could be revived by the subsequent payment of salary continuation benefits, the ALJ determined that the claimant sustained an additional injury from work she performed within two years of filing her claim and awarded benefits for that injury.

Appealing, the claimant has asserted, unsuccessfully, that the manifestation of disability did not occur until she first missed work on July 11, 1997, and that the ALJ's finding to the contrary constituted an abuse of discretion. In the alternative, she has asserted that the employer's payment of benefits during various periods of temporary, total disability (TTD) that occurred between July 11, 1997, and April 20, 1998, served to revive and extend the period of limitations, thereby making her entire claim compensable. A final argument is that KRS 342.040(1) is unconstitutionally arbitrary because it did not entitle the claimant to a "notice to prosecute" letter until more than two years after the February 15, 1995, manifestation of disability.

The claimant first sought medical treatment for her symptoms in November, 1994, and learned that her condition was probably related to her work. She was placed on light duty, wore splints, and was prescribed anti-inflammatory medication. It is undisputed that she informed her employer of her condition in 1994, and she testified that her employer's carrier paid her medical bills. After nerve conduction studies were positive for bilateral carpal tunnel syndrome, the claimant was referred to Dr. Ritterbusch, an orthopedic surgeon. On February 15, 1995, Dr. Ritterbusch assigned permanent work restrictions, informed the claimant of her diagnosis and its cause, but did not assign a permanent functional impairment rating. Although he discussed the possibility of surgery with the claimant as well, by March 22, 1995, he had concluded that it was not appropriate.

The ALJ noted that the employer accommodated the claimant's restrictions and, for that reason, she was able to continue working, without absence, until July, 1997. She missed work due to her injury from July 11–28, 1997, worked through August 17, 1997, and then underwent surgery. She missed work thereafter from August 25, 1997, to April 30, 1998. During these absences, she received a continuation of her salary pursuant to a company policy that did not take into account whether the absence was work-related so long as there was a doctor's excuse. The claimant testified that she knew that she was entitled to TTD benefits but that she never disputed the receipt of sickness and accident benefits because TTD benefits would have been at a lesser rate.

Medical evidence established that there was a measurable increase in the extent of the claimant's injury due to the trauma

incurred after June 8, 1996, and a 7% functional impairment to the increase. Her entire impairment due to the condition was 14%. After determining that the claimant did not retain the physical capacity to return to her former employment, the ALJ awarded income and medical benefits. Concluding that the subsequent injury became manifest on August 17, 1997, the last day that the claimant worked, the ALJ assigned liability for the award to the insurance carrier who provided coverage at that time.

The claimant's subsequent petition for reconsideration was granted to the extent that the ALJ corrected the amount of the claimant's weekly benefit. Furthermore, the ALJ made specific findings that the claimant was temporarily totally disabled during certain periods that salary continuation was paid but that the employer was not entitled to credit for those sickness and accident benefits under the decision in *Williams v. Eastern Coal Corp.*, Ky., 952 S.W.2d 696 (1997). This appeal by the claimant follows unsuccessful appeals to the Workers' Compensation Board and the Court of Appeals.

In *Alcan Foil Products v. Huff,* Ky., 2 S.W.3d 96 (1999), we determined that the "manifestation of disability" to which *Randall v. Pendland,* Ky.App., 770 S.W.2d 687 (1988), referred was actually the manifestation of physically and/or occupationally disabling symptoms that lead a worker to learn that she has sustained a work-related injury. The entitlement to workers' compensation benefits arises with a work-related accident that causes an injury and does not require that the injury result in a permanent functional impairment or that it be permanently disabling. Thus, the notice and limitations provisions for a gradual injury are triggered when the worker becomes aware of a gradual injury and knows that it was caused by work, regardless of whether the symptoms that led to discovery of the injury later subside. This approach is consistent with one of the purposes of the notice requirement, to enable the employer to take measures to minimize the worker's ultimate impairment and, hence, its liability. *Id.* at 101. Notice is not at issue in the instant case. The employer has known of the injury from the outset, and the claimant testified that her employer's workers' compensation carrier paid her 1995 medical bills. With regard to the employer's obligation under KRS 342.038(1) to notify the Department of Workers' Claims (Department) that the claimant had been injured, the ALJ noted that a Form SF-1 (first report of injury) was filed on December 8, 1994, two days after the claimant reported her symptoms. The claimant also admits that the employer filed another report on June 24, 1997.

In *Special Fund v. Clark,* Ky., 998 S.W.2d 487 (1999), we returned to the question of limitations as it applied to a gradual injury. We pointed out that once a worker became aware of the existence of a work-related gradual injury and of its cause, the period of limitations began to run for whatever occupational disability was attributable to trauma incurred before that date. If the worker continued to sustain additional work-related trauma, and suffered additional injury thereafter, KRS 342.185 operated to prohibit compensation for any disability that was attributable to trauma incurred more than two years preceding the filing of the claim. *Id.* at 490.

It is clear that the claimant knew and had notified her employer of her work-related injury in December, 1994. She

admitted that she was paid workers' compensation medical benefits for the treatment that she obtained early in 1995. Considering Dr. Ritterbusch's testimony, there clearly was substantial evidence that the claimant had sustained a gradual injury and knew that it was caused by her work no later than February 15, 1995. We also conclude that substantial medical evidence supported the findings that a portion of her functional impairment and occupational disability were attributable to trauma incurred within two years of the filing of the claim and, therefore, were compensable.

The claimant asserts that *Crenshaw v. Weinberg*, Ky., 805 S.W.2d 129 (1991), supports her argument that the entire claim was timely, but we are not persuaded that it does. *Crenshaw* involved the interplay of two provisions of the Motor Vehicle Reparations Act. KRS 304.39–230(1) provided that an action for no-fault benefits must be filed within two years of the date of "loss" or four years of the date of "accident," whichever was earlier. KRS 304.39–230(6) provided that an action for tort liability must be commenced with two years after the injury, death, or last reparation payment, "whichever later occurs." The plaintiff filed a no-fault claim more than two years after the accident, but it was timely under subsection (1) because it was filed within two years of the loss that was claimed and within four years of the accident. Within four years after the accident, the defendant's carrier made a reparation payment, after the plaintiff's tort action was filed. The defendants argued that the tort claim was barred by limitations because no reparation payment was made within two years after the accident. We explained, however, that the plain language of subsection (6) provided that the "later" event triggered the period of limi-

tations for filing a tort action. There, the later event was a reparation payment that was made pursuant to a timely filed claim for no-fault benefits. Thus, because the no-fault claim was timely and resulted in a reparation payment, the tort limitations period was tolled by the reparation payment on that claim. Had the no-fault claim not been timely, no reparation payment would have been required, and none was likely to have been made. Thus, the tort limitations period would not have been tolled.

The instant case concerns the period of limitations for a workers' compensation claim which, unlike a tort claim, is purely a statutory cause of action. Neither *Crenshaw* nor the statutes involved therein are persuasive under the present facts. KRS 342.185 provides, in pertinent part, as follows:

> [N]o proceeding under this chapter for compensation for an injury or death shall be maintained ... unless an application for adjustment of claim for compensation with respect to the injury shall have been made with the department within two (2) years after the date of accident. ... If payments of income benefits have been made, the filing of an application for adjustment of claim with the department within the period shall not be required, but shall become requisite within two (2) years following the suspension of payments or within two (2) years of the accident, whichever is later.

In the instant case, the first salary continuation payment to the claimant was not made until July, 1997, more than two years after a gradual injury became manifest. Thus, the two-year period of limitations had run before the payment was made. In other words, under KRS 342.185, as construed in *Alcan Foil Products v. Huff,*

*supra,* the period of limitations was triggered when the claimant's injury became manifest, and no intervening payment served to toll the period before it expired. Thus, the relevant question on the present facts is whether a period of limitations may either be waived or revived by the payment of a salary continuation benefit sometime after the period has expired.

It has long been recognized that KRS 342.185 operates together with KRS 342.040(1) and tolls the period of limitations until after the payment of voluntary income benefits ceases in order to protect injured workers who might be lulled into a false sense of security by receiving such payments and, therefore, fail to actively pursue a claim. *See City of Frankfort v. Rogers,* Ky.App., 765 S.W.2d 579, 580 (1988). Thus, an employer who fails to comply with KRS 342.040(1) by notifying the Board that voluntary payments have ceased and, therefore, prevents the Board from complying with its duty under KRS 342.040(1) to notify the worker of his right to prosecute a claim and of the applicable period of limitations, is not permitted to raise a limitations defense. *Id.* Consistent with this, payments that are made by an employer pursuant to an employment contract and that are reasonably viewed by a worker as having been made in lieu of workers' compensation benefits also toll the period of limitations. *Kentucky West Virginia Gas Co. v. Spurlock,* Ky., 415 S.W.2d 849 (1967).

■ Here, the ALJ did not make a specific finding concerning whether the claimant reasonably believed that the salary continuation benefits were paid in lieu of workers' compensation benefits because, regardless of whether they were, they did not toll the period of limitations as to the injury that existed on February 15, 1995.

Clearly, in instances where a payment is neither made nor due until after the period of limitations has expired, it could not be said that such a payment lulled the worker into a false sense of security and, therefore, caused his subsequent claim to be untimely. The same is true with regard to an employer's alleged failure to notify the Department that it was terminating income benefits that were neither made nor due until after the period of limitations had expired. For that reason, we are not persuaded that the legislature intended for the period of limitations to be revived by payments that are made after it has expired.

■ The question then becomes whether such payments would constitute a waiver of the employer's limitations defense, in other words, whether the claimant's employer waived the limitations defense as to that part of the claimant's injury that existed on February 15, 1995, by making salary continuation payments beginning in July, 1997. As we observed in *Harris Brothers Construction Co. v. Crider,* Ky., 497 S.W.2d 731, 733 (1973):

[A] waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon the right.... No one can be said to have waived that which he does not know, or where he has acted under a misapprehension of the facts. 28 Am.Jur.2d, Estoppel and Waiver, Sections 157 and 158; (citations omitted).

In view of the fact that the claimant continued to work until August 17, 1997, the ALJ's decision to treat this claim as being for two gradual injuries (one injury that became manifest on February 15, 1995, and a subsequent injury that became man-

ifest on August 17, 1997) was consistent with the rationale that was expressed in *Special Fund v. Clark, supra.* It is clear that the employer knew of the initial injury in December, 1994, but the salary continuation payments were made to the claimant more than two years later, shortly after the employer had filed a second accident report. At the point that the payments began, the claimant had sustained minitrauma for more than an additional two years and had finally decided to undergo surgery. Under those circumstances, we are not persuaded that the evidence compelled a finding that the employer knowingly and voluntarily waived its limitations defense with regard to the injury that became manifest on February 15, 1995, by paying salary continuation benefits in 1997 and 1998.

KRS 342.038(1) requires an employer to keep a record of all work-related injuries and to file a report with the Department in instances where a worker misses more than one day of work due to an injury. It is undisputed that this employer did so. KRS 342.038(1) contains no requirement that the Department notify the worker of his right to prosecute a claim, but the claimant's appeal is not pitched to KRS 342.038(1). Instead, she attacks the constitutionality of KRS 342.040(1), which provides, in pertinent part, as follows:

> Except as provided in KRS 342.020, no income benefits shall be payable for the first seven (7) days of disability unless disability continues for a period of more than two (2) weeks, in which case income benefits shall be allowed from the first day of disability.... If the employer should terminate, or fail to make pay-ments when due, the employer shall notify the commissioner of the termination or failure to make payments and the commissioner shall, in writing, advise the employee or known dependent of right to prosecute a claim under this chapter.

The claimant focuses on the fact that although KRS 342.040(1) triggers the employer's duty to give notice, it does so only after income benefits are not paid when due or after they are terminated. Thus, in instances where income benefits first become payable after the applicable period of limitations has run, KRS 342.040(1) triggers the employer's and the Department's duty to give notice of the right to prosecute after the period of limitations has already expired. Only those workers who miss more than seven days of work due to their injury before the applicable period of limitations has run are entitled to receive notice of their right to prosecute a claim before the period of limitations has run. She asserts, therefore, that the provision is unconstitutionally arbitrary and that it violates the due process protections of the constitutions of the United States and Kentucky.[1]

 Particularly when they involve the regulation of economic matters, the acts of the legislature are entitled to a strong presumption of constitutionality. *Delta Air Lines, Inc. v. Com., Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985). A statute involving the regulation of economic matters or matters of social welfare complies with both due process and equal protection requirements if it is rationally related to a legitimate state objective.

---

1. As at the Court of Appeals, the claimant has certified that the Attorney General was served with a copy of her brief. But, again, the record contains no response by the Attorney General.

The constitutionality of a statutory classification will be upheld if the classification is not arbitrary, or if it is founded upon any substantial distinction suggesting the necessity or propriety of the classification. See *Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446, 455 (1994); *Waggoner v. Waggoner,* Ky., 846 S.W.2d 704 (1992); *Estridge v. Stovall,* Ky.App., 704 S.W.2d 653, 655 (1985). Thus, a party seeking to have a statute declared unconstitutional is faced with the burden of demonstrating that there is no conceivable basis to justify the legislation. *Buford v. Com.,* Ky.App., 942 S.W.2d 909 (1997).

The claimant argues that by enacting KRS 342.040(1), the legislature has recognized the need for injured workers to be informed that the period of limitations on their claim has begun to run but that the statute provides for notice only to a limited group of workers. We have previously explained, however, that the purpose of KRS 342.185's provision for tolling the period of limitations during the payment of voluntary income benefits is to prevent injured workers who are paid voluntary income benefits from being lulled into a false sense of security and, therefore, failing to file a timely claim. Furthermore, we have explained that KRS 342.040(1) acts in concert with KRS 342.185 to prevent employers from manufacturing a limitations defense. *City of Frankfort v. Rogers, supra.* Both are clearly legitimate state objectives and serve the larger objective of ensuring that the costs of workplace injuries are borne by the businesses in which they occur rather than the public. In view of those objectives, it is rational to require employers to notify the Department when they terminate voluntary income benefits and then to require the Department to notify the affected worker of the right to prosecute and of the applicable period of limitations. As a result, all workers who receive voluntary income benefits become entitled upon the termination of those benefits to receive notice, and workers who remain disabled at that time are more likely to file a timely claim.

The claimant focuses upon the fact that workers must have missed more than seven days of work in order to be eligible for income benefits and, therefore, to receive notice from the Department. She characterizes the legislative choice of that number as being arbitrary because it is under-inclusive, *i.e.,* it fails to provide notice to all injured workers of the right to file a claim and of the applicable period of limitations. This is essentially an equal protection argument.

By itself, the fact that a legislative classification is underinclusive will not render it unconstitutionally arbitrary. The legislature is free to choose to remedy only part of a problem. *First Bank & Trust Co. v. Board of Governors of Federal Reserve System,* 605 F.Supp. 555 (E.D.Ky. 1984); *Richardson v. Secretary of Labor,* 689 F.2d 632 (1982). Furthermore, it may "select one phase of a field and apply a remedy there, neglecting the others." *Cleland v. National College of Business,* 435 U.S. 213, 220, 98 S.Ct. 1024, 55 L.Ed.2d 225 (1978), quoting *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Thus, even if we were to assume for the purposes of discussion that the legislature recognized a need to inform all injured workers of the right to prosecute a claim within the applicable period of limitations, we are not persuaded that the failure to provide notice to those workers who did not miss work due to their injury and were not paid or entitled to be paid income benefits renders KRS 342.040(1) unconstitutionally arbitrary.

Employers are required to pay income benefits for the essential financial support of those who are permanently disabled by a workplace injury for a period of from 425 weeks to life so that the public will not be required to support them and their families. Thus, there is a legitimate purpose for requiring the Department to notify workers who are likely to have been permanently disabled by a workplace injury of the right to prosecute a claim and of the applicable period of limitations. Although it is true that some workers will miss more than seven days of work after being injured but will retain no permanent occupational disability, and some workers will not miss work but will sustain a permanent disability, the fact remains that those who miss more than seven days of work are more likely to have sustained a permanent occupational disability than those who have missed no work at all. Thus, there is a rational basis for providing notice to the former group but not to the latter.

The claimant missed no work within two years after the injury that became manifest on February 15, 1995, and she was neither due nor paid any income benefits before the period of limitations expired on that injury. Therefore, she does not come within the class of workers that KRS 342.040(1) was designed to protect, and the provision was not arbitrary simply because it failed to apply to that portion of her claim.

The decision of the Court of Appeals is affirmed.

All concur.