RENDERED:  MAY 8, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0122-MR

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES, DEPARTMENT
FOR MEDICAID SERVICES                                   APPELLANT


                APPEAL FROM FLOYD CIRCUIT COURT
v.              HONORABLE JOHNNY RAY HARRIS, JUDGE
                ACTION NO. 24-CI-00318


MOUNTAIN COMPREHENSIVE
CARE CENTER, INC.; STEPHANIE
SIMMONS, AS NEXT FRIEND OF
JOHN DOE #1, A MINOR; AND
TELLA HOWARD, AS NEXT FRIEND
OF JOHN DOE #2, A MINOR                                 APPELLEES

                              AND

NO. 2025-CA-0166-MR

RUSSELL COLEMAN, ATTORNEY                               APPELLANT
GENERAL, ON BEHALF OF THE
COMMONWEALTH OF KENTUCKY


                APPEAL FROM FLOYD CIRCUIT COURT
v.              HONORABLE JOHNNY RAY HARRIS, JUDGE
                ACTION NO. 24-CI-00318

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; DEPARTMENT
FOR MEDICAID SERVICES;
MOUNTAIN COMPREHENSIVE
CARE CENTER, INC.; STEPHANIE
SIMMONS, AS NEXT FRIEND OF
JOHN DOE #1, A MINOR; AND
TELLA HOWARD, AS NEXT FRIEND
OF JOHN DOE #2, A MINOR                                    APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND A. JONES, JUDGES.

JONES, A., JUDGE:  These consolidated appeals arise from the Floyd Circuit Court's order declaring portions of 2023 House Bill 56 ("HB 56") unconstitutional and enjoining their enforcement.  In the relevant part, HB 56 governs the provision and reimbursement of behavioral health services under Kentucky's Medicaid program, including reimbursement to community mental health centers for services provided outside their designated regional service areas.

Appellees challenged the statute on equal protection and due process grounds, and the circuit court agreed, concluding that HB 56 creates an arbitrary,

geographically based classification lacking a rational basis. The Cabinet for Health and Family Services and the Attorney General appeal.

Because HB 56 is rationally related to legitimate governmental interests, Appellees failed to carry their burden of demonstrating that the statute is unconstitutional. Accordingly, we reverse and remand for adjudication of the Appellees' remaining claims.

## I. PARTIES

*Appellee, Mountain Comprehensive Care Center ("MCCC")*, is a nonprofit corporation organized under the laws of the Commonwealth of Kentucky and is enrolled in the Kentucky Medicaid Program as a "regional community services program" operating as a community mental health center ("CMHC"). Pursuant to KRS[1] 210.370(1)(k), MCCC is designated to Service Area Eleven, which includes Johnson, Magoffin, Martin, Floyd, and Pike Counties, and is headquartered in Prestonsburg, Floyd County, Kentucky. MCCC provides mental health, substance use, and developmental and intellectual disability services to Medicaid beneficiaries both within and outside of its regional service area. It has been in existence since 1966.

**Appellees, John Doe #1 and John Doe #2**, are participants in the Kentucky Medicaid Program who receive community-based mental health services

---

[1] Kentucky Revised Statutes.

from MCCC in Bath County. Bath County lies outside MCCC's designated service area and is instead part of Service Area Nine, which includes Rowan, Montgomery, Menifee, Morgan, and Bath Counties. KRS 210.370(1)(i).

**Appellant, the Cabinet for Health and Family Services ("the Cabinet")**, is an agency of the Commonwealth of Kentucky responsible for administering the Kentucky Medicaid Program, including the processing and payment of reimbursement to participating providers. KRS 194A.010. In that role, the Cabinet administers reimbursement payments to regional community services programs operating as community mental health centers, including MCCC, for services provided to Medicaid beneficiaries such as John Doe #1 and John Doe #2.

*Appellant, the Attorney General of Kentucky ("the Attorney General")*, is the chief law officer of the Commonwealth. KRS 15.020. Although not a party in the proceedings below, the Attorney General was served with notice of the constitutional challenge pursuant to KRS 418.075. The Attorney General thereafter filed a separate appeal in this Court "pursuant to KRS 15.020 and KRS 15.090."

## II. BACKGROUND

This appeal concerns the constitutionality of HB 56 which amended Kentucky's statutory framework governing the provision and reimbursement of behavioral health services under the Kentucky Medicaid Program.

To place the constitutional issues in the proper context, it is necessary to examine the development and structure of Kentucky's behavioral health system, including the roles of CMHCs and behavioral health services organizations ("BHSOs"), as well as the reimbursement scheme in place prior to HB 56.

### A. *Kentucky's Behavioral Health System Before House Bill 56*

The provision of mental health services in Kentucky has evolved from a centralized, institutional model to a community-based system structured around regional providers. Historically, the Commonwealth provided care directly through state-operated institutions, where individuals with mental illness and developmental and intellectual disabilities were treated in state facilities. *Ky. Emps. Ret. Sys. v. Seven Cntys. Servs., Inc.*, 580 S.W.3d 530, 532 (Ky. 2019).

In 1963, Congress enacted the Community Mental Health Act, which sought to move treatment from institutional settings to community-based care by funding the development of local mental health centers. Pub. L. No. 88-164, Title II, Oct. 31, 1963, 77 Stat. 290 (codified as amended at 42 U.S.C.[2] § 2689 *et seq.*).

---

[2] United States Code.

Kentucky adopted that model through KRS Chapter 210, creating a statutory framework for the development and oversight of regional community-based mental health services.

To implement that system, KRS Chapter 210 authorized the creation of regional boards "for mental health or individuals with an intellectual disability" to serve designated multi-county areas. *See* KRS 210.380. Those boards were charged with planning for and overseeing the provision of services within their assigned regions and, in turn, created or authorized nonprofit entities to operate as the community providers for those areas. Thus, the Commonwealth moved from direct provision of care to a model in which designated nonprofit providers, operating under statutory, regulatory, and contractual obligations, would furnish services at the local level.

Under this system, the boards established CMHCs to operate within set geographic areas. The CMHCs served as the primary safety-net providers within their respective regions. *Seven Cntys. Servs.*, 580 S.W.3d at 532. CMHCs operated pursuant to statutory, regulatory, and contractual obligations and were expected to provide a comprehensive range of behavioral health services within their assigned areas. KRS 210.410; 902 KAR[3] 20:091.

---

[3] Kentucky Administrative Regulations.

CMHCs operate under heightened obligations not imposed on other behavioral health providers. They are required by statute, regulation, and contract to provide broad, coordinated services within their designated regions. *See* KRS 210.410; 902 KAR 20:091. As the parties describe the pre-HB-56 system, CMHCs were expected to function as the region's comprehensive provider, including crisis services and round-the-clock availability, while also serving individuals regardless of their ability to pay. KRS 210.410; KRS 210.450(1). Their contracts with the Cabinet also imposed additional reporting, data-collection, and oversight obligations tied to their regional roles.

Because CMHCs functioned as the designated regional safety-net providers, Medicaid reimbursed them differently from other behavioral health providers. Prior to the expansion of Medicaid, each regional CMHC negotiated a reimbursement rate reflecting costs unique to its service region. Later, the system moved to an annual cost-settlement model under which CMHCs submitted annual cost reports that were audited by the Department for Medicaid Services, and afterward, a settlement was made based on each CMHC's individual cost basis. 907 KAR 1:045. In practical terms, CMHCs continued to receive a preferred, cost-based reimbursement rate for services provided in their assigned regions, with rates that could vary by region.

Beginning in 2011, and more significantly after the passage of the Affordable Care Act and the 2014 expansion of Medicaid, Kentucky's behavioral health system changed. The Commonwealth expanded the types of services and providers eligible for Medicaid reimbursement and transferred certain state-funded behavioral health services into the Medicaid scope of care in order to maximize federal funding. At roughly the same time, Kentucky created a separate licensure category for BHSOs. 902 KAR 20:430.

BHSOs differ from CMHCs in several important respects. Unlike CMHCs, BHSOs are not assigned to a particular region, are not created by regional boards, and do not contract with the Cabinet to serve as the primary provider for a designated service area. Instead, they are licensed to provide one or more categories of behavioral health services. *See* 902 KAR 20:430. To obtain licensure, a BHSO needs only to provide at least one covered service category; it is not required to offer the full continuum of services expected of a CMHC. *Id.* Nor is it subject to the same safety-net obligations. Additionally, BHSOs are not required to provide services regardless of a patient's ability to pay, and they are not subject to the same regional reporting and oversight obligations as CMHCs in their assigned regions.

BHSOs are also reimbursed differently. Rather than receiving a cost-based rate unique to the provider, BHSOs are reimbursed under a fixed Medicaid

fee schedule. 907 KAR 15:025. Under that system, BHSOs are paid a standard fee-for-service rate, regardless of regional cost differences, and those rates are generally lower than the reimbursement available to CMHCs under the cost-based system.

Once BHSOs entered the market, CMHCs—including MCCC—began providing services outside their assigned regions. According to the Cabinet's description of the pre-HB-56 system, when a CMHC expanded outside its region, it did so not as the designated regional CMHC for that new area, because the regional boards' territorial assignments had not changed, but functionally as another behavioral health provider operating in a region served by a different CMHC.

Yet Kentucky law did not expressly address how such out-of-region services should be reimbursed. In that statutory silence, the Cabinet continued to reimburse MCCC and similarly situated CMHCs at their preferred CMHC rates, even when they provided services outside their assigned regions. Thus, a CMHC operating outside its own region could receive a higher reimbursement rate than a BHSO providing the same service and, depending on the relative rates, could even receive a different rate than the CMHC assigned to the region where the service was delivered.

By the time HB 56 was enacted, the system thus included two distinct provider types: regional CMHCs, which operated as designated safety-net providers with broad obligations within assigned multi-county regions, and BHSOs, which could provide selected services without assuming the same region-wide responsibilities. At the same time, some CMHCs, including MCCC, were operating outside their assigned regions and receiving the CMHC reimbursement-rate for those services. That is the system against which HB 56 was enacted.

### B. House Bill 56

HB 56, enacted during the 2023 Regular Session of the Kentucky General Assembly, amended several statutes, including KRS 210.005, KRS 210.370, KRS 210.410, and KRS 205.560. As relevant here, HB 56 codified the Commonwealth's regional service structure. The Act established fifteen "regional service areas" and identified the counties assigned to each region. *See* KRS 210.370(1)(a)-(o). Under this framework, each of the Commonwealth's 120 counties is assigned to a designated regional service area served by a CMHC. *See* KRS 210.005(6). For example, MCCC is assigned to Service Area Eleven, which includes Johnson, Magoffin, Martin, Floyd, and Pike Counties. *See* KRS 210.370(1)(k).

HB 56 also addresses the provision of services outside a CMHC's assigned region. Under KRS 210.370(3)(a), a regional community services

-10-

program may provide services outside its designated service area, but when doing so, it is considered to be operating as a BHSO. Consistent with that classification, KRS 205.560(8)(b) provides that a CMHC providing services outside its assigned region "shall not be reimbursed" under the CMHC fee schedule but "shall instead be reimbursed" under the fee schedule applicable to BHSOs. The practical effect of HB 56 is that CMHCs receive a lower reimbursement rate when providing services outside of their assigned regions.

### C. The Present Litigation

Appellees filed this action in Floyd Circuit Court challenging the constitutionality of HB 56. They alleged that the statute creates an arbitrary, geographically based two-tiered reimbursement scheme that violates equal protection and due process under the Kentucky Constitution. The Cabinet defended the statute, asserting that HB 56 reflects a rational distinction among providers operating under different obligations and regulatory frameworks and seeks to promote the continued existence and vitality of Kentucky's regional model.

On October 21, 2024, Appellees moved for summary judgment on their equal protection and due process claims. The circuit court granted the

motion, declared HB 56 unconstitutional, and permanently enjoined its enforcement.[4]

The Cabinet filed a timely appeal. The Attorney General, who had been served with notice of the constitutional challenge pursuant to KRS 418.075 but did not intervene in the circuit court proceedings, filed a separate appeal pursuant to KRS 15.020 and KRS 15.090. Appellees moved to dismiss the Attorney General's appeal on the ground that the Attorney General lacked standing as a non-party. That motion was passed to this merits panel and is now before the Court.

### III. THE ATTORNEY GENERAL'S AUTHORITY TO APPEAL

Appellees move to dismiss the Attorney General's appeal, No. 2025-CA-0166-MR, arguing that because the Attorney General did not intervene in the proceedings below, he was not a party of record and therefore lacks standing to appeal. The Attorney General responds that the appeal is authorized by statute, specifically KRS 15.090, and that no requirement exists that the Attorney General be a party below to invoke that authority.

---

[4] In addition to their equal protection and due process claims, Appellees asserted claims under federal and state Medicaid law, as well as claims alleging that HB 56 constituted an impermissible taking and special legislation in violation of the Kentucky Constitution. However, in moving for summary judgment, Appellees sought relief only on their equal protection and due process claims, expressly reserving their remaining claims for further proceedings. Since the circuit court decided the equal protection and due process claims in Appellees favor, it rendered their remaining claims moot and making the circuit court's judgment final and appealable.

-12-

Because this issue presents a question of statutory interpretation and appellate jurisdiction, our review is *de novo*. *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011); *Gasaway v. Commonwealth*, 671 S.W.3d 298, 306 (Ky. App. 2023).

It is well settled that, as a general rule, only parties of record in the trial court may appeal from a judgment. *See Howell v. Commonwealth*, 163 S.W.3d 442, 446 (Ky. 2005); *Bartholomew v. Paniello*, 287 S.W.2d 616, 617 (Ky. 1956). At the same time, Kentucky law recognizes that the Attorney General occupies a unique constitutional and statutory role. The Attorney General is the Commonwealth's "chief law officer" and is charged with representing the interests of the Commonwealth in litigation. KRS 15.020(1), (3); *see also Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 868 (Ky. 1974). His "primary obligation is to the Commonwealth, the body politic," rather than to any individual agency or officer. *Id.*

In furtherance of that role, the General Assembly has enacted KRS 15.090, which provides: "The Attorney General may prosecute an appeal, without security, in any case from which an appeal will lie whenever, in his judgment, the interest of the Commonwealth demands it." The scope of that statute and whether it permits the Attorney General to appeal without having intervened are the questions before us.

-13-

We begin with the plain language of the statute. KRS 15.090 authorizes the Attorney General to "prosecute an appeal . . . in any case . . . whenever, in his judgment, the interest of the Commonwealth demands it." The statute contains no limitation requiring that the Attorney General be a party in the proceedings below or that it must seek intervention prior to prosecuting its appeal rights.

Although Appellees rely on general principles of appellate practice and the intervention procedures set forth in CR[5] 24.03, those authorities do not purport to limit the General Assembly's ability to confer a right of appeal by statute. Kentucky's Constitution expressly contemplates that appellate jurisdiction may be defined by law. KY. CONST. § 111(2); *see also Bluegrass Tr. for Historic Pres. v. Lexington-Fayette Urb. Cnty. Gov't Plan. Comm'n*, 701 S.W.3d 196, 213 (Ky. 2024).

Reading KRS 15.090 according to its plain terms, we conclude that it authorizes the Attorney General to prosecute an appeal in any case in which an appeal would otherwise lie, when he determines that the interests of the Commonwealth so require. Nothing in the statute conditions that authority on prior intervention.

---

[5] Kentucky Rules of Civil Procedure.

This interpretation is consistent with the Attorney General's independent constitutional role. Although executive branch agencies may defend statutes through their own counsel, the Attorney General retains a distinct obligation to ensure that the Commonwealth's laws are adequately defended. *See Commonwealth ex rel. Beshear v. Commonwealth Office of the Governor ex rel. Bevin*, 498 S.W.3d 355, 363-64 (Ky. 2016). Accordingly, we conclude that KRS 15.090 authorizes the Attorney General's appeal in this case, notwithstanding his decision not to intervene in the proceedings below.[6]

Our conclusion that the Attorney General may prosecute this appeal does not render him unconstrained on appellate review. It remains a fundamental principle of appellate practice that issues must be preserved in the trial court to be considered on appeal. An appellate court reviews issues that were presented to and decided by the trial court; it does not entertain new claims raised for the first time on appeal. *See Howell*, 163 S.W.3d at 446.

This principle applies with equal force here. While KRS 15.090 permits the Attorney General to prosecute an appeal in the interest of the Commonwealth, it does not authorize the assertion of new issues that were not raised in the proceedings below. To hold otherwise would permit a non-party to expand the scope of the litigation on appeal, undermining the adversarial process

---

[6] By separate Order, we deny the Appellees' motion to dismiss Appeal No. 2025-CA-0166-MR.

-15-

and depriving the opposing party of the opportunity to develop a record and respond in the trial court. Thus, to the extent the Attorney General elects not to intervene at the trial court level, he does so at a risk, as he will be constrained on appeal by the arguments presented by the parties below.

Thus, although the Attorney General may pursue this appeal, his arguments are limited to those issues properly preserved and presented to the circuit court. Here, the Attorney General's arguments mirror those advanced by the Cabinet below, and no preservation issue has been identified. Accordingly, this limitation does not affect our consideration of the merits.

### IV. MERITS

The Floyd Circuit Court granted summary judgment in favor of Appellees and declared HB 56 unconstitutional on both equal protection and due process grounds.

With respect to equal protection, the circuit court concluded that HB 56's reimbursement scheme creates an impermissible geographic classification lacking any rational basis. The court reasoned:

> HB 56's two-tiered geographic-based reimbursement rate scheme does not have a rational basis and violates equal protection under the Kentucky Constitution and the United States Constitution. For similarly situated CMHCs providing the same services to the same Medicaid population in the same geographic area to be reimbursed at different rates—one at CMHC rates and

-16-

the other at lower rates applicable to a different type of provider—violates equal protection.

The court emphasized that the statute results in different reimbursement rates based solely on whether services are provided within or outside a CMHC's assigned region, concluding:

> There is no rational or legitimate reason for a CMHC providing services to Medicaid recipients outside a particular regional service area to be reimbursed for such services at lesser rates than a similarly situated CMHC providing the same services to the same Medicaid population in the same geographic location. That is the very definition of arbitrariness.

Based on this reasoning, the circuit court held that HB 56's classification scheme is arbitrary and violates equal protection.

The circuit court reached a similar conclusion under due process. Applying a two-step rational basis framework, the court first identified what it believed to be the only permissible governmental purpose underlying Medicaid reimbursement:

> Because the federal statutory factors of efficiency, economy, quality of care, and equal access to care must be adhered to by states in setting reimbursement rates, promoting those ends is the only permissible legitimate governmental purpose for HB 56's new Medicaid reimbursement scheme.

The court then concluded that HB 56 does not further—and in fact undermines—those objectives: "HB 56 does not accomplish this governmental purpose; in fact,

-17-

it is contrary to this purpose." In particular, the court found that the statute's reimbursement structure discourages CMHCs from providing services outside their assigned regions, thereby limiting access to care:

> The effect of HB 56's reimbursement rate scheme is to financially disincentivize and otherwise discourage CMHCs from providing services to Medicaid recipients outside of regional service areas . . . . This means Medicaid recipients will have fewer options available to them when seeking needed behavioral health services.

Based on these conclusions, the circuit court determined that HB 56 fails rational basis review and is arbitrary in violation of due process.

Appellants contend that the circuit court erred as a matter of law in concluding that HB 56 violates equal protection and due process. First, Appellants argue that the circuit court misapplied the rational basis standard by requiring the Commonwealth to justify the statute with a single, narrowly defined governmental purpose. According to Appellants, rational basis review does not limit the legislature to one articulated purpose, nor does it require the Commonwealth to prove that a statute actually advances a particular objective. Rather, Appellants maintain that the statute must be upheld if any conceivable rational basis exists to support it.

Second, Appellants assert that the circuit court erred in concluding that CMHCs providing services inside and outside their assigned regions are "similarly situated." They argue that CMHCs operate under fundamentally

different obligations when acting within their designated service areas—including requirements to provide a full continuum of services, maintain 24-hour crisis response, and serve all individuals regardless of ability to pay. By contrast, when operating outside their assigned regions, CMHCs function more like behavioral health services organizations, which are not subject to those same obligations. Thus, Appellants contend that the statute distinguishes between materially different circumstances rather than treating similarly situated entities differently.

Third, Appellants argue that the circuit court improperly characterized HB 56 as an arbitrary geographic classification. They maintain that the statute is not based on geography for its own sake, but instead reflects a rational legislative effort to align reimbursement rates with the regulatory obligations imposed on providers within their assigned regions. In Appellants' view, the distinction drawn by HB 56 is between providers acting in different capacities—not merely providers located in different places.

Fourth, Appellants challenge the circuit court's due process analysis, asserting that the court erred in concluding that the federal Medicaid Act supplies the only permissible governmental purpose for HB 56. They argue that the federal statute establishes requirements for participation in the Medicaid program but does not constrain the Commonwealth's authority to structure reimbursement systems in the manner assumed by the circuit court.

Finally, Appellants contend that, under the proper application of rational basis review, HB 56 is constitutional because the legislature could reasonably conclude that reimbursing CMHCs differently when they operate outside their assigned regions promotes legitimate state interests, including cost control, administrative efficiency, and the preservation of a stable, regionally based behavioral health system.

We review *de novo* both the circuit court's grant of summary judgment and its determination that a statute is unconstitutional. *Louisville/Jefferson Cnty. Metro Gov't v. O'Shea's-Baxter, LLC*, 438 S.W.3d 379, 382 (Ky. 2014); *Moore v. Ward*, 377 S.W.2d 881, 883 (Ky. 1964). Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. CR 56.03. Here, the material facts relevant to Appellees' constitutional claims are not in dispute. The question before us is therefore one of law.

"[A] party seeking to have a statute declared unconstitutional is faced with the burden of demonstrating that there is no conceivable basis to justify the legislation." *Holbrook v. Lexmark Int'l Grp., Inc.*, 65 S.W.3d 908, 915 (Ky. 2001) (citing *Buford v. Commonwealth*, 942 S.W.2d 909, 911 (Ky. App. 1997)). Stated differently, "[t]he Commonwealth does not have the burden to prove that a statute is constitutional, but rather the one challenging it has such a burden."

*Commonwealth v. Howard*, 969 S.W.2d 700, 706 (Ky. 1998). And "[t]he Commonwealth has no burden to produce evidence supporting the rationality of any statutory classifications." *Bloyer v. Commonwealth*, 647 S.W.3d 219, 226 (Ky. 2022).

That burden is especially difficult to meet where, as here, the challenged enactment concerns economic regulation and the provision of healthcare services. "The legislature has broad discretion to determine what is harmful to the public health and welfare." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 548 (Ky. 2000). So long as the General Assembly acts within constitutional bounds, courts must apply the law as written regardless of whether they would have drawn the line differently as a matter of policy. *See Posey v. Commonwealth*, 185 S.W.3d 170, 175 (Ky. 2006). "Among the police powers of government, the authority to promote and safeguard public health is a high priority." *Lexington Fayette Cnty. Food & Beverage Ass'n v. Lexington-Fayette Urb. Cnty. Gov't*, 131 S.W.3d 745, 749 (Ky. 2004).

Both Appellees' equal protection and due process claims are governed by rational basis review. *See Zuckerman v. Bevin*, 565 S.W.3d 580, 594-96 (Ky. 2018); *Beshear v. Acree*, 615 S.W.3d 780, 816 (Ky. 2020). Under equal protection principles, the threshold question is whether the statute treats similarly situated persons or entities differently. *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455,

465 (Ky. 2011). If so, the classification nevertheless survives so long as it bears a rational relationship to a legitimate governmental interest. *Id.* Under substantive due process principles, "when economic and business rights are involved, rather than fundamental rights, substantive due process requires that a statute be rationally related to a legitimate state objective." *Acree*, 615 S.W.3d at 816 (quoting *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624, 627 (Ky. 1995)).

Rational basis review is deliberately deferential. The General Assembly "need not articulate its reasons for enacting the statute," particularly where it is engaged in line drawing. *Teco/Perry Cnty. Coal v. Feltner*, 582 S.W.3d 42, 47 (Ky. 2019). Such an enactment is invalid only if there is no rational connection between the law and the purpose for which legislative power exists. *O'Bryan v. Zip Express*, 636 S.W.3d 457, 462-63 (Ky. 2021) (quoting *City of Louisville v. McDonald*, 470 S.W.2d 173, 178 (Ky. 1971)). "So long as the statute's generalization is rationally related to the achievement of a legitimate purpose[,] the statute is constitutional." *Hunter v. Commonwealth*, 587 S.W.3d 298, 304 (Ky. 2019).

With these principles in mind, we turn first to equal protection and then to due process. Although the analyses overlap significantly, we address each separately because the circuit court treated them as distinct grounds for relief.

The circuit court concluded HB 56 violates equal protection because, in its view, the statute requires "similarly situated CMHCs providing the same services to the same Medicaid population in the same geographic area to be reimbursed at different rates." That framing drives the entirety of the court's equal protection analysis. It is also where the analysis goes astray.

The circuit court treated the only relevant comparison as this: one CMHC providing services inside a particular region and another CMHC providing services outside that same region. From that perspective, the court reasoned that the same provider type is delivering the same service to the same population in the same geographic location, yet receiving different reimbursement depending solely on where that provider is "located geographically." But HB 56 does not classify providers based on geography alone. It classifies them according to the capacity in which they are operating within Kentucky's behavioral health system.

That distinction is critical. A CMHC operating within its assigned region functions as the designated regional community services program for that area. In that role, it bears the heightened statutory, regulatory, and contractual obligations discussed above: it must provide comprehensive services, maintain crisis response, serve as a regional safety-net provider, and operate under the reporting and oversight structure tied to its regional role. KRS 210.410; 902 KAR 20:091; KRS 210.400. By contrast, when a CMHC elects to provide services

-23-

outside its assigned region, HB 56 expressly provides that it "shall be considered, including by the cabinet, to be operating as a behavioral health services organization and not a regional community services program." KRS 210.370(3)(a). The statute thus does not treat identical circumstances differently; rather, it recognizes that the provider is functioning in a materially different role in the area where the services are being provided. MCCC is free to provide a single service in Bath County. But in Floyd County, it must provide that same service in addition to the full panoply of other services required by statute, regulation, and its contract.

Once that statutory distinction is acknowledged, Appellees' similarly situated premise collapses. A CMHC acting within its designated region and a CMHC acting outside that region are not similarly situated for reimbursement purposes because they are not operating under the same obligations. Nor is a CMHC acting outside its region similarly situated to the designated regional provider for that area, because the latter remains responsible for the full range of regional duties that justify the preferred reimbursement structure. The General Assembly was entitled to recognize those differences and legislate accordingly.

The circuit court's contrary reasoning also improperly narrowed the statute to a purely geographic classification. Geography is certainly part of the statutory structure; the General Assembly chose to formalize fifteen regional

service areas and assign counties to each.  But the significance of those regions lies not in geography for its own sake, but in the duties attached to them.  The statute ties reimbursement to whether the provider is acting as the designated regional safety-net provider or instead operating outside that structure.  That is a functional and regulatory distinction, not merely a cartographic one.

Once the classification is properly understood, rational basis review is easily satisfied.  The General Assembly could reasonably conclude that preferred CMHC reimbursement rates should be reserved for those providers when they are acting within their assigned regions and carrying the burdens associated with that role.  It could also reasonably conclude that when a CMHC elects to provide services outside its region—where it is no longer functioning as the designated regional provider and is instead operating as a BHSO—it should be reimbursed at the BHSO rate.  Aligning reimbursement with obligations is, at minimum, a conceivable rational basis.  So too are cost control, administrative consistency, and preservation of a stable region-based safety-net system.  Whether the General Assembly chose the best policy is not the question.  The question is whether the classification is arbitrary.  It is not.

This distinction can be illustrated in practical terms.  When a CMHC operates within its assigned regional service area, it is obligated to provide a comprehensive range of behavioral health services to the population of that region.

Those obligations include maintaining continuous access to care and offering services across a spectrum of needs, some of which may be more resource-intensive or less economically favorable than others. The CMHC must provide those services regardless of their relative cost or profitability, and regardless of patient ability to pay, as part of its role as the designated regional safety-net provider.

By contrast, when a CMHC elects to provide services outside its assigned region, it is not functioning as the designated regional provider and is not subject to those same comprehensive obligations. Instead, it may offer only selected services—potentially focusing on those that are less resource-intensive or more financially sustainable—without assuming responsibility for the full continuum of care within that region. In doing so, it operates alongside other providers, including behavioral health services organizations, that are likewise permitted to offer limited categories of services without bearing region-wide obligations.

In this context, the General Assembly could reasonably conclude that a CMHC providing a full continuum of services under mandatory regional obligations is not similarly situated to a CMHC providing selected services outside its assigned region. It could further conclude that aligning reimbursement with

those differing obligations is a rational means of structuring the Commonwealth's behavioral health system.

Throughout these proceedings, Appellees have repeatedly asserted that HB 56 is fundamentally unfair because it permits differing reimbursement rates based on where services are provided, notwithstanding their status as a community mental health center. We do not dismiss that concern out of hand. Certain aspects of Appellees' argument have intuitive appeal. But fairness, standing alone, is not the constitutional standard.

Rational basis review does not require that a statute operate with precision or produce perfectly equitable results in every application. Rather, the question is whether the classification drawn by the General Assembly is rationally related to a legitimate governmental interest. Here, Appellants maintain that HB 56 is designed to preserve Kentucky's regional behavioral health system by recognizing the heightened obligations CMHCs undertake within their assigned service areas. When operating within those regions, CMHCs are required to provide a full continuum of services and function as the designated safety-net provider. When operating outside their assigned regions, however, they are not subject to those same comprehensive obligations and may provide more limited services, often in direct competition with the region's designated CMHC and with

behavioral health services organizations.  The General Assembly could reasonably conclude that reimbursement should reflect those differing roles.

To be sure, one might imagine alternative approaches, and Appellees suggest that HB 56 addresses a problem that is more theoretical than practical.  But rational basis review is not a vehicle for courts to second-guess legislative policy choices or to require optimal solutions.  "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  *Steven Lee Enters., Inc. v. Varney*, 36 S.W.3d 391, 395 (Ky. 2000) (quoting *Heller v. Doe*, 509 U.S. 312, 321 (1993)).  A classification "does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality."  *Id.* (quoting *Heller*, 509 U.S. at 321).  Indeed, "[a] classification by the legislature should be affirmed unless it is positively shown that the classification is so arbitrary and capricious as to be hostile, oppressive and utterly devoid of rational basis."  *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 19 (Ky. 1985).  Measured against that standard, HB 56 does not fail simply because it may be viewed as imperfect or even unfair in some applications.

The circuit court also relied on a line of cases invalidating geographic classifications and on out-of-state Medicaid reimbursement decisions.  Those authorities do not alter our conclusion.  The Kentucky geographic-classification

cases involved statutes that imposed disparate treatment based solely on location, untethered to a real difference in role or obligation. HB 56 does something different. It uses regional lines to define where the designated obligations of a CMHC begin and end and then aligns reimbursement with those obligations. That is precisely the sort of legislative line-drawing courts do not second-guess under rational basis review. *See Teco/Perry Cnty. Coal*, 582 S.W.3d at 47; *O'Bryan*, 636 S.W.3d at 462-63.

In short, the circuit court misidentified the relevant class, mischaracterized the statute as purely geographic, and effectively required the Commonwealth to justify the law with evidence rather than requiring Appellees to negate every conceivable rational basis. Because HB 56 draws a distinction that is rationally related to legitimate governmental interests, Appellees failed to carry their burden under the Equal Protection Clause.

As noted above, substantive due process review in the context of economic regulation asks whether the statute is rationally related to a legitimate governmental objective. *Acree*, 615 S.W.3d at 816. The circuit court began from the premise that because Medicaid reimbursement is involved, "the only permissible legitimate governmental purpose" for HB 56 was to ensure that reimbursement is consistent with efficiency, economy, quality of care, and equal access to care under the federal Medicaid Act. From that premise, the court

-29-

concluded that HB 56 was contrary to that purpose because, in its view, lower reimbursement for out-of-region services would discourage CMHCs from providing such services and reduce patient options.

That reasoning is flawed in two related respects. First, the circuit court improperly limited the universe of legitimate governmental purposes. This case comes to us on Appellees' equal protection and due process claims. Appellees expressly reserved their remaining claims, including their Medicaid-law claims, when they moved for summary judgment. The issue before the circuit court, therefore, was not whether HB 56 independently complied with every federal Medicaid requirement, but whether the statute was arbitrary under the Kentucky and United States Constitutions. In answering that question, the court was not free to collapse constitutional rational basis review into a Medicaid-rate-setting inquiry and then declare that the Medicaid factors supplied the "only permissible" governmental purpose for the statute. Rational basis review is far broader than that. A statute survives if any legitimate purpose may be conceived, whether or not the legislature expressly articulated it and whether or not the trial court believed it to be the best or most immediate one. *Holbrook*, 65 S.W.3d at 915; *Bloyer*, 647 S.W.3d at 226.

Second, even if the federal Medicaid considerations identified by the circuit court were relevant background, they do not render HB 56 irrational. The

General Assembly could reasonably conclude that tying preferred reimbursement to a CMHC's regional obligations would promote economy and administrative efficiency by ensuring that higher reimbursement follows the provider's higher burdens. It could further conclude that preserving the integrity of the regional system would, over time, support quality and access by protecting the designated providers responsible for comprehensive regional coverage. Rational basis review does not permit a court to strike down a statute merely because the challengers or the court predict that a different reimbursement model might better promote access or produce preferable policy outcomes. *See Acree*, 615 S.W.3d at 816; *O'Bryan*, 636 S.W.3d at 462-63.

The circuit court's discussion of telehealth, managed care contracts, and the possibility that CMHCs may reduce out-of-region services illustrates the problem. Those may be arguments against the wisdom of HB 56. But courts do not invalidate economic legislation simply because the law may produce debatable consequences or because another arrangement might seem fairer or more efficient. "Where the existence of such rational connection is 'fairly debatable' the action will not be disturbed by a court." *O'Bryan*, 636 S.W.3d at 463 (quoting *McDonald*, 470 S.W.2d at 178). The Due Process Clause does not authorize courts to choose among competing reimbursement policies.

For the same reasons that defeat Appellees' equal protection challenge, HB 56 survives substantive due process review. The statute reflects a rational legislative decision to align reimbursement with the role a provider is performing within Kentucky's behavioral health system. That is enough.

Because the circuit court and Appellees place substantial weight on federal Medicaid authorities, a brief word is warranted. Nothing in this opinion should be read to minimize the importance of federal Medicaid requirements or the Commonwealth's obligation to comply with them. But this appeal does not present a final adjudication of Appellees' reserved Medicaid-law claims. Nor does it require us to determine whether HB 56 is the best or only permissible reimbursement methodology under federal law. The question before us is narrower: whether Appellees established as a matter of law that HB 56 is arbitrary and unconstitutional under equal protection and due process principles.

They did not. The constitutional rational basis inquiry is not displaced simply because a statute concerns Medicaid reimbursement. Appellees may not convert what is, at bottom, a policy disagreement over reimbursement structure into a successful facial constitutional challenge absent proof that there is no conceivable rational basis for the law. Because several rational bases readily appear on the face of the statutory scheme, the circuit court erred in granting summary judgment.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Floyd Circuit Court is REVERSED, and this matter is REMANDED for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT FOR APPELLANT IN 2025-CA-0122-MR AND APPELLEE IN 2025-CA-0166-MR, CABINET FOR HEALTH AND FAMILY SERVICES:

Blake A. Vogt
Patricia Abell
Frankfort, Kentucky


BRIEFS AND ORAL ARGUMENT FOR APPELLANT IN 2025-CA-0166-MR, RUSSELL COLEMAN, ATTORNEY GENERAL, ON BEHALF OF THE COMMONWEALTH OF KENTUCKY:

Matthew F. Kuhn
John H. Heyburn
Caleb B. Childers
Frankfort, Kentucky

BRIEFS AND ORAL ARGUMENT FOR APPELLEES IN 2025-CA-0122-MR AND 2025-CA-0166, MOUNTAIN COMPREHENSIVE CARE CENTER, INC., STEPHANIE SIMMONS AS NEXT FRIEND OF JOHN DOE NO. 1, AND TELLA HOWARD AS NEXT FRIEND OF JOHN DOE NO. 2:

J. Guthrie True
Richard M. Guarnieri
Frankfort, Kentucky


BRIEF FOR *AMICUS CURIAE*, KENTUCKY ASSOCIATION OF REGIONAL PROGRAMS, INC.:

William A. Hoskins
Christopher F. Hoskins
Lexington, Kentucky